[Civ. No. 4496.   Fourth Dist.   Feb. 11, 1953.]

PATRICIA M. BROWN, Appellant, v. JAMES PAUL HARPER, Respondent.

Launer, Chaffee & Launer for Appellant.

Clayson & Stark for Respondent.

MUSSELL, J.—This is an action brought by plaintiff against her former husband for an accounting, for restitution and damages alleged to have resulted from false and fraudulent representations made by defendant with respect to the nature and extent of his property. A cross-complaint was filed by defendant in which he claimed that the plaintiff was indebted to him in the sum of $522.11 for money had and received. The trial court rendered judgment in favor of the defendant both on the complaint and on his cross-complaint. Plaintiff's appeal is based upon the contention that the evidence does not support the findings and judgment.

Plaintiff and defendant were married on June 17, 1946, and lived together until May, 1947. On May 15, 1947, plaintiff commenced an action for divorce in which she sought an award to her of the community property and made no claim for alimony. Two days later the parties executed a property settlement agreement providing for a transfer to defendant of the house and furniture owned by the parties and the payment to plaintiff of the sum of $500. Plaintiff waived all right to support and maintenance. The agreement contained the following provisions:

"WHEREAS, said husband represents that he has no title to, or interest in, Glenn Harper & Sons or in the Corona Theatre or in any theatre conducted by Glenn Harper and has not disposed of any such interest prior to making this settlement . . .

"Now, THEREFORE, relying upon said representations and in consideration of the respective covenants and promises hereinafter made, said parties covenant, promise and agree as follows:

"In consideration of the foregoing covenants and agreements and relying upon them, each party hereto forever quit claims, surrenders and releases unto the other, any and all

rights, claims, interest or estate, whether of community, inheritance, marital support or any other nature whatsoever, present or future, in and to any and all property and earnings of the other, . . ."

Plaintiff contends that the quoted representations were false; that she was induced thereby to proceed with the trial of the divorce action without requesting an adjudication with respect to the community property of the parties or for her support and maintenance.

Glenn Harper, who had been in the motion picture business since 1911, owned a theatre in Corona and leased two in Fontana. At the time of his marriage to plaintiff, defendant James Harper was a partner with his father, Glenn Harper, and with his two brothers, Leslie and Ernest, in the operation of the Corona theatre and one in Fontana. The partnership related solely to the operation of said theatres and the partnerships did not own any real property or rights therein or any other substantial physical assets. In this connection defendant testified that he had no actual knowledge of his partnership interest. Glenn Harper testified that there was no written or express partnership agreement with his sons; that the partnerships did not in any way extend to the ownership of the theatres or other physical property; that the partnerships were as to the profits only; that there was no agreement with defendant as to a division of partnership earnings; that James had no ownership in the profits of the partnership; that James had no interest in partnership funds or income unless he, Glenn Harper, saw fit to give it to him.

The record shows that during the time the plaintiff and defendant were married they were employed in the Corona theatre. Defendant was doing routine work not involving any managerial direction, the theatre being managed by his brother, Leslie, under the supervision of his father. Plaintiff and defendant received between $40 and $45 per week for their joint services and they expended all of the sum received by them from the theatres. It appears also that Glenn Harper paid from the business numerous traffic violation fines for James, plus payments on the home and furniture and $500 paid by defendant to plaintiff at the time of the property settlement agreement.

Income tax returns for the partnerships, prepared by an accountant under the direction of Glenn Harper, indicated that the operating partnerships made substantial profits and that the shares of the net income allocated to defendant ex-

ceeded the sums actually paid to him. However, Glenn Harper retained control and ownership of these funds. He testified that eventually his sons would get one-fourth of the profits of the business but that his son, James, had only a drawing account.

The trial court found that the weekly payments to defendant constituted all of the partnership income attributable to the personal character, energy, ability and capacity of the defendant and that defendant's one-fourth interest in the partnership was acquired prior to his marriage to plaintiff and was his separate property. There is substantial evidence to support these findings and the court's conclusion that plaintiff and defendant had no community property at the time of their divorce except as set forth in the property settlement agreement.

■ Appellant argues that the presumption is that all property acquired after marriage (except that acquired by a married woman or by an instrument in writing) is community property and that the presumption can be overcome only by strong evidence to the contrary. (Citing *Estate of Bryant*, 3 Cal.2d 58 [43 P.2d 529], and *Estate of Jolly*, 196 Cal. 547 [238 P. 353].) However, these cases hold that the presumption is disputable and may be controverted by other evidence, direct or indirect, and even by an inference tending to prove a contrary contention. We cannot say as a matter of law that the evidence here was insufficient to controvert it.

Appellant contends that the trial court failed to consider the element of defendant's separate investment in the theatre business in determining what part of the partnership income should be allocated as community property. ■ The rule is stated in *Huber* v. *Huber*, 27 Cal.2d 784, 792 [167 P.2d 708], as follows:

"In regard to earnings, the rule is that where the husband is operating a business which is his separate property, income from such business is allocated to community or separate property in accordance with the extent to which it is allocable to the husband's efforts or his capital investment."

■ As was said in *Witaschek* v. *Witaschek*, 56 Cal.App. 2d 277, 281 [132 P.2d 600]:

"The capital which the husband brings to the marriage partnership is his own separate property, but it is a question for the court to determine what portion of the profits thereafter arises from the use of this capital and what part arises from the activity and personal ability of the husband. That

portion of the income due to the 'personal character, energy, ability and capacity of the husband' is community property.''

In the instant case defendant's present interest in the partnership was limited to a drawing account of $40 to $45 per week and there was substantial evidence upon which to base the court's findings that certain weekly payments constitute all of the partnership income attributable to the character, energy, ability and capacity of defendant. In view of this finding it was unnecessary to find as to the income, if any, from defendant's separate investment.

Plaintiff contends that the trial court erred in holding that plaintiff was not entitled to damages or restitution for the alleged false representations of defendant. This contention is without merit. The court concluded that the defendant had an interest in the operating partnership which was his separate property; that the representation in the property settlement agreement that defendant had no title to or interest in the Glenn Harper and Sons or in the Corona theatre was false, although unknowingly and innocently made; that plaintiff did not rely upon this representation to her damage and that there was no basis for restitution. Defendant's testimony that he had no actual knowledge of this partnership interest, the fact that there was no partnership agreement, the further fact that a division of interest was never discussed between father and son and the testimony as to the nature of the interest of defendant in the business furnish sufficient evidence to support the trial court's conclusion that the representation was unknowingly and innocently made.

As was said in *Cox* v. *Westling,* 96 Cal.App.2d 225, 229 [215 P.2d 52]:

''The elements of actionable fraud frequently have been summarized as follows:

'' 'When a cause arises out of an alleged false representation, the plaintiff, in order to prevail, must ordinarily show that the representation was as to a material fact; that such fact was false and known to be false by the party making it, or else recklessly made, or without reasonable grounds for believing its truth; that the representation was made with intent to induce the other party to do or refrain from doing some act; that it was relied upon by the other party—in other words, that such other party was actually misled and deceived and induced by it to act or refrain from acting; that in so acting or refraining from acting he was ignorant of the falsity

of the representation and reasonably believed it to be true; and that he thereby suffered damage or injury. The absence of any one of the elements is generally fatal to a recovery.' (12 Cal.Jur. 724-725.) (*Wheat* v. *McNeill,* 111 Cal.App. 72, 78 [295 P. 102]; *Andrews* v. *Bankers & Shippers Ins. Co.,* 101 Cal.App. 566, 575 [281 P. 1091]; see, also, 37 C.J.S. 215.)''

█ In the instant case the elements of intent and knowledge are lacking and such absence is fatal to recovery for fraud. There is also testimony in the record indicating that plaintiff did not rely upon this representation. The divorce complaint was filed two days before the property settlement agreement was executed and did not contain a request for alimony or support money. Plaintiff testified that she did not talk to defendant about it and stated in her deposition that she ''wanted a divorce and didn't care about alimony or anything else provided she could get the divorce and get it right away.''

█ Finally, it is argued that neither the findings nor the evidence support the judgment for defendant on the cross-complaint. The evidence shows that the partnership paid an estimated income tax for the year 1947 in the name of plaintiff and defendant. These funds were charged against the partnership interest of defendant and were made from the partnership business account. When the final returns for the 1947 fiscal year were filed, an additional payment was made on the separate return of defendant, and a request was made for a refund on the separate return of plaintiff. This request was granted and the government sent a check for $522.11, payable to plaintiff, representing this overpayment. She received this check on May 6, 1949, and cashed it. She refused to return these funds to defendant and he seeks recovery thereof in his cross-complaint on the theory that plaintiff is indebted to him in the sum of $522.11 for money had and received for his use. Glenn Harper testified that the annual tax payments for defendant were made from the partnership business and were charged to his account and the accountant (Mr. Cowen) testified that the source of the monies to pay the particular estimate of tax involved in the cross-complaint was the partnership business account. Under this evidence (which is uncontradicted) it appears that the tax refund involved would be payable to the partnership or to the plaintiff and not to the defendant individually. The cross-complaint was not filed by defendant in a representative

capacity but by him individually. Under such circumstances, the evidence was insufficient to support a judgment in favor of defendant on the cross-complaint.

Judgment on the complaint affirmed. Judgment on the cross-complaint reversed. Each party to bear their own costs on appeal.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied March 5, 1953, and appellant's petition for a hearing by the Supreme Court was denied April 7, 1953.