[Civ. No. 10087.   Third Dist.   Sept. 1, 1961.]

RANDALL G. CALLOWAY, Respondent, v. PRISCILLA DOWNIE, Individually and as Administratrix, etc., et al., Appellants.

Brandenburger, White & Dillon for Appellants.

Anthony J. Kennedy and Carl Kuchman for Respondent.

WARNE, J. pro tem.*—This is an appeal by the defendants and cross-complainant from a judgment in favor of R. G. Calloway, the surviving husband of Ruth Anne Calloway, declaring that certain real property standing in the name of the deceased was community property.

The complaint alleges eight causes of action. Each of the first seven causes relates to a separate parcel of real property. The eighth cause of action concerns the proceeds of the sale of two parcels. Except for two parcels held in joint tenancy, the respondent husband claimed an undivided one-half interest in the property on the theory that it was community property.

The answer admitted respondent's joint-tenancy interest with right of survivorship as to a one-half interest in Parcels 5, 6 and 7, but denied that any of the remaining real estate was community property. The judgment determined that all the real estate was community property except a one-half interest in Parcels 5, 6 and 7 which was held in joint tenancy.

For simplicity the decedent will be hereafter referred to as "Ruth Anne." The real property which is primarily in issue will be referred to as the "Broadway Property," and "X Street Property," and the "12th Street Property."

The facts pertinent to our conclusion show that Ruth Anne and plaintiff were married in February 1949, at which time she was 42 years old and he was 52. She had been employed as a school teacher for approximately 23 years and for several years prior to the marriage he had been engaged in the produce business. She retired in 1952 and plaintiff quit his business in 1954, apparently because he was losing money in its operation.

At the time of her marriage Ruth Anne owned an undivided one-half interest in the Broadway and X Street properties. Title to this interest was in the name of Ruth Anne Reed. Her brother, Robert Reed, owned the other one-half interest. The property was acquired by them through the estate of their father. In May 1949 Robert deeded his interest in the "X Street Property" to Ruth Anne and plaintiff as joint tenants, and in April 1950 Robert deeded his interest in the "Broadway Property" to Ruth Anne in her name alone. The title to the properties has remained the same up to the present time.

Admittedly, at the time of the marriage Ruth Anne owned as her separate property an undivided interest in both the Broadway and X Street properties. It is respondent's con-

---

*Assigned by Chairman of Judicial Council.

tention in support of the judgment that Mr. and Mrs. Calloway dealt with, spoke of, and treated the property and its proceeds as their community estate and that "Nothing more is required."

At the conclusion of the trial the court in its initial proposed findings of fact found that the property standing in Ruth Anne's name "was by free and voluntary engagements and transactions had between plaintiff as husband and RUTH ANNE CALLOWAY as wife during their marriage made to be treated and held as community property of plaintiff and his said wife, now deceased, and was and remained at the time of her death the community property of plaintiff and RUTH ANNE CALLOWAY, . . . ."

Objections to the foregoing proposed findings were filed by the appellants in which appellants asked that the court specify what the "engagements and transactions" referred to were; what was the consideration for such engagements and transactions; and also to find on the question of undue influence on the part of respondent.

Responsive to such objections other findings of fact were submitted wherein it was found "that it was the mutual intent and purpose on the part of RUTH ANNE CALLOWAY and the part of plaintiff, as husband and wife, . . . that the undivided one-half interest so purchased be acquired and held by them as their community property and the undivided one-half interest already owned by RUTH ANNE CALLOWAY become and be held by them as their community property and through their said mutual assent and their course of conduct thereafter as husband and wife in managing, controlling and dealing with said real property and its proceeds, at the time of death of RUTH ANNE CALLOWAY, deceased, the same was owned and held by plaintiff and decedent as their community property. . . ." These findings also related that the dealings between the parties were without fraud or undue influence on the part of the plaintiff.

Objections again were filed by the appellants to the second proposed findings of fact. The objections specifically were that the findings were ambiguous in that it did not appear;

"(a) Whether or not it is intended that the 'mutual assent' of the spouses, as therein found, was in fact an agreement, and, if so, when said agreement was entered into between the spouses;

"(b) If the word 'assent' is intended to be construed the

352

same as the word 'intent,' interchangeably used in said Finding as 'mutual intent' and 'mutual assent';

"(c) Whether or not there was any understanding between the spouses, apart from the acquisition of the undivided one-half interest in the said real property by purchase in April of 1950, by virtue of which the undivided one-half interest theretofore owned by RUTH ANNE CALLOWAY became the community property of the spouses; . . . ."

The proposed findings of fact were again revised and the phrase "said mutual assent" was changed to "mutual intent."

Appellants again objected on the ground that the proposed findings were ambiguous in that it could not be determined whether it was intended that "mutual intent and purpose" of the spouses actually constituted an agreement.

The objections were denied and the trial court filed the findings of fact as revised.

▮ It is clear that "'. . . the character of property as separate or community is fixed as of the time it is acquired. The character so fixed continues until it is changed in some manner recognized by law, as by agreement of the parties.'" (*Ciambetti* v. *Department of Alcoholic Beverage Control,* 161 Cal.App.2d 340 [326 P.2d 535], citing *Garten* v. *Garten,* 140 Cal.App.2d 489, 492 [295 P.2d 23].)

▮ "A judgment rendered without findings on all material issues must be reversed. . . . ▮ Not only must the court make findings on all material issues, but the findings made must be definite and certain." (*Estate of McAfee,* 182 Cal.App.2d 553, 556 [6 Cal.Rptr. 79].) Furthermore, it is now the statutory rule that "If upon appeal . . . it appears that the court has not made findings as to all facts necessary to support the judgment, or that the findings are ambiguous or conflicting upon a material issue of fact, the court before which such appeal . . . is pending shall not infer that the trial court found in favor of the prevailing party on such issue if it appears that the party attacking the judgment made a written request for a specific finding on such issue . . . prior to the entry of judgment. . . ." (Code Civ. Proc., § 634.)

▮ The trial court was not obligated to find that at a particular time and place the parties formally entered into an agreement to transmute the property from separate to community property ownership or to find an express oral agreement. (*Lawatch* v. *Lawatch,* 161 Cal.App.2d 780 [327 P.2d 603].) But under the mandate of section 634 of the Code of Civil Procedure and the specific objections of the

appellants such an agreement could not be inferred from the broad finding that the character of the property had been transmuted.

The series of proposed findings by appellants progresses from those more indicative of a determination of an agreement to findings less certain as to this issue. The repeated objections from appellants show that the transformations in the findings indicate a determination by the trial judge that there was in fact no agreement, express or implied. In fact, it is stated by appellants that during the course of a conference in chambers relative to the objections raised by them to the proposed findings the trial judge (in the face of repeated requests by defendants) stated he would not find expressly an agreement had been made between the spouses.

Section 632 of the Code of Civil Procedure requires that findings shall "fairly disclose the court's determination of all issues of fact. . . ." ██ The prohibition of section 634 of the Code of Civil Procedure against inferred findings applies if the party attacking the judgment requested a specific finding on the issue in question. (34 State Bar J., p. 638.) The purpose of the legislation was to compel trial judges to make findings on all material issues of fact. (34 State Bar J., p. 156; see *Lewetzow* v. *Sapiro*, 188 Cal.App.2d 841 [11 Cal.Rptr. 126].) Under section 634 of the Code of Civil Procedure, on the facts herein, we must resolve the ambiguity in favor of the appellants. And since the existence of agreement is material to respondent's case the court's decision in that regard must be reversed. (*Bias* v. *Reed,* 169 Cal. 33, 42 [145 P. 516].)

As to the undivided one-half interest in the "Broadway Property" acquired subsequent to the marriage (title being taken in Ruth Anne's name alone), a different result might be reached. ██ Civil Code, section 164, provides that when property is acquired by a married woman by an instrument in writing there is a presumption as between husband and wife that the property so acquired is her separate property. The presumption is rebuttable, and it is sufficient to show that the spouses intended that the property, when acquired, should be their community property. ██ As this court said in *Sloper* v. *Sloper,* 91 Cal.App.2d 238, 244 [204 P.2d 910] : "It is not necessary in support of findings and a judgment determining community interests of a husband and wife in property acquired after their marriage, to prove a previous *express agreement* between them that it shall become their community property. Oral evidence satisfactorily indicating that the

spouses intended that it should be their community property is competent and adequate to support findings and a judgment to that effect. . . ."

Appellants agree that the conduct and declarations of the parties might in themselves rebut the presumption of section 164 of the Civil Code but contend, and properly so, that a material issue in this regard was the extent of the community contribution to the purchase of the property. The trial court failed to make any finding relative to the status of the consideration given for the "Broadway Property" acquired after marriage from decedent's brother, Robert Reed. Appellants requested a finding that all the earnings of the spouses during the marriage were used in payment of their living expenses. (See *Estate of Arstein,* 56 Cal.2d 239 [14 Cal.Rptr. 809, 364 P.2d 33].) The trial court was therefore apprised of the issue, and certainly this court in view of the conflicting evidence cannot now decide the amount of community contribution. Furthermore, in view of appellants' objections to the findings, this court cannot indulge in an implied finding that all the consideration paid for the "Broadway Property" acquired after marriage was community property. The trial court's judgment as to this property must also be reversed.

Since we have concluded that the trial court's failure to find specifically whether or not there was an agreement compels a reversal, we deem it unnecessary to discuss the other issues raised by appellant.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.