[Civ. No. 10255.   Third Dist.   Apr. 17, 1962.]

MARY HALDEMAN, Plaintiff and Appellant, v. THOMAS HALDEMAN, Defendant and Respondent.

James G. Changaris, Sullivan, Roche, Johnson & Farraher and Gerald O'Connor for Plaintiff and Appellant.

Arthur S. Powell, Wilke, Fleury & Sapunor and Sherman C. Wilke for Defendant and Respondent.

PIERCE, J.—Mary Haldeman was awarded an interlocutory decree of divorce from Thomas Haldeman on the ground of extreme cruelty. Although appellant-wife appeals from the whole judgment, she assigns as error: (1) The trial court's finding that a pharmacy business is solely the respondent's separate property, (2) its failure to make a finding on the issue of alimony, and, (3) its failure to award her alimony.

The parties were married on May 3, 1937, and separated on November 25, 1959, because of respondent's involvement with another woman. They have one child, a daughter, who at the time of the trial was 16 years of age. Respondent is a pharmacist. At the time of the divorce he was the proprietor of a successful pharmacy business which in 1959 grossed over $170,000 and which returned a net profit of over $41,000 before taxes.

■ The presumption is that this property is community and the burden of proof was upon respondent to prove by a preponderance of the evidence that the business was his separate property. (*Estate of Duncan,* 9 Cal.2d 207, 217 [70 P.2d 174]; *Estate of McCarthy,* 127 Cal.App. 80, 88 [15 P.2d 223]; *Estate of Fellows,* 106 Cal.App. 681 [289 P. 887]; *Pereira* v. *Pereira,* 156 Cal. 1, 11, 12 [103 P. 488, 134 Am.St. Rep. 107, 23 L.R.A. N.S. 880].) ■ This presumption is fundamental to the community property system and has greater force where the marriage has been of long duration (*Estate of Duncan, supra.*) It is stated in *Estate of Jolly,* 196 Cal. 547 [238 P. 353], at page 555: ". . . The property in the possession of one of the spouses at the close of a long marital relation must be presumed to be community unless a better right can be established by the spouse claiming it to be his or her separate property."

Respondent concedes the foregoing rules, but asserts that the burden of proof was satisfied and the presumption overcome by proof that at the time of the marriage respondent had already acquired a one-third interest in a pharmacy business partnership which was the nucleus of the present business and was acquiring, and had almost completed the purchase of, the other two-thirds. He further contends that the finding of the trial court here that the business was the separate property of the husband settles the issue.

■ Where the husband at the time of the marriage is operating a business which is his separate property, income from such business is distributed to community or separate in accordance with the extent to which it is allocable to the

husband's efforts or his capital investment. The capital which a husband brings to the marriage partnership is his separate property, but that portion of the income due to his skill and energy after the marriage is community. This is well settled. (*Brown* v. *Harper*, 116 Cal.App.2d 48, 52, 53 [253 P.2d 95].)

It is also well settled, following the general rule that the sufficiency of the evidence is generally a matter for the trial court or jury, that "a finding of a trial court that property is either separate or community in character is binding and conclusive upon the appellate court, if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences. . . .

Further, a finding against a presumption is binding upon the appellate court . . . unless the evidence to rebut it is so weak and improbable that the finding is without substantial support." (*Estate of Trelut*, 26 Cal.App.2d 717, 723 [80 P.2d 147].)

On the other hand, where it appears that a trial court has arbitrarily drawn a conclusion that a business is the separate property of a husband without giving heed to the rule that it "was respondents' duty to clarify the history of the property and to show by a preponderance of the evidence what part of the same was separate property," its judgment will be reversed. (*Estate of McCarthy*, 127 Cal.App. 80, 88 [15 P.2d 223]; see also *Estate of Fellows*, 106 Cal.App. 681 [289 P. 887].)

The fact that a substantial business owned at the termination of a long marriage had had its origin in a small business acquired by the husband before the marriage does not mean that it is all the separate property of the husband. (*Mueller* v. *Mueller*, 144 Cal.App.2d 245, 250 [301 P.2d 90].)

A business is a type of property which is a composite of tangible and intangible properties. Its tangibles will be its fixtures, inventory of supplies and stock in trade, perhaps a building or leasehold, cash on hand, cash in bank, accounts receivable and other personal property. Its intangibles include principally its good will as a going business.

So considered, it will be obvious from the review of the evidence below that not all of the small pharmacy business the husband acquired in the period from 1931-1936 can be traced to, and is extant in, the substantial business of today.

Here the evidence is substantially without conflict, and is not fairly susceptible to different inferences. Also, in the absence of any finding to the contrary, it must be assumed

that the uncontradicted testimony was given credence. (*Mears v. Mears*, 180 Cal.App.2d 484, 502 [4 Cal.Rptr. 618].) From our study of this record, we have concluded that it does not support the finding that the entire pharmacy is the husband's separate property. A substantial part must be community.

Respondent had, in 1931, by applying a part of his wages towards payment thereof, acquired a one-third interest in a pharmacy known as Yuba City Pharmacy, located at Second and Bridge Streets in that city. His partners, not active in the business, were Kleinsorge and Halkyard. In 1934 he entered into an agreement to buy out these partners. He testified that he could not remember the purchase price. Whatever it was, he started to purchase at the rate of $50 per month (a rate later increased somewhat). The exact total value of the business at this time could not be recalled either by respondent or Halkyard, who testified he thought it was about $6,800. Respondent thought it was around $10,000-$12,000. *The gross volume of the business then was $18,000 a year (only approximately $1,500 a month).* As stated above, it now grosses annually over $170,000. In 1936 respondent moved the business to Plumas Street, its present location. The parties were married in 1937. At that time respondent owed a small balance on the purchase price, approximately $1,500, but testified there was enough in the store account to have paid it off. His only other assets were two bank accounts of several hundred dollars each, and a used automobile. He owed approximately $500 borrowed on a life insurance policy. Respondent testified that there was a recession in 1938 which reduced his volume of business. During this period, Mrs. Haldeman, who had been a registered nurse at the time of the marriage, went out on four or five private nursing cases to help the family income, but her husband did not like her to work so she discontinued nursing. In 1939 the drugstore at the new location commenced to increase its volume. Respondent applied himself diligently to the business, working no regular hours and frequently at night. This was his continued practice all throughout the marriage until the last two years, when, as respondent expressed it, "after the years I feel that I am entitled to the time off." Until these last two years he was the sole pharmacist in the store except for part-time help. (There are now two full-time pharmacists.) During World War II, when it was thought there was a possibility respondent would be drafted, appellant wife worked at the store, learning to do bookkeeping, and helping to wait on the trade.

With the arrival of their daughter, appellant devoted her time to the care of the child and the home. Respondent continued to run the business.

The family lived modestly. They were thrifty. Respondent acknowledged his wife was not a spender. Their sole source of income was the business and from it the parties accumulated a fortune of $220,000, in addition to the value of the business.

Income from the business throughout the years was not kept separate. All expenses, both business and household, except small items, were paid out of the business account. All investments and other properties acquired were also paid from this account. All properties were acquired in the joint names of the parties and it was stipulated that all these properties were community. Income tax payments (made on joint returns) were also paid out of the business account.

As to the value of the business at the time of the divorce, although the record is far from illuminating, it is clear that it had grown into a very substantial enterprise. Respondent who had the burden of overcoming the presumption that the business was community, produced no evidence of its value, refused to express any opinion thereof excepting to state on cross-examination he would reject an offer of $100,000 (because he did not want to be deprived of an occupation). It was shown that in 1959 the business earned a net profit of over $41,000 before taxes and it was not shown this was disproportionate to other years. Income from a business is an aid in determining value. (*Proctor* v. *Arakelian,* 208 Cal. 82, 87 [280 P. 368].) The Income and Federal Estate Tax services digest many cases illustrating the use of income under various formulas to determine the value of a business. It is to be noted, however, that these cases are concerned with values where a partner or proprietor has died or is withdrawing from a business; not where he is continuing in business. (See, e.g. C.C.H. Federal Estate and Gift Tax Rep. 1961 Reg. § 20.2031-3, pars. 1203.10, 1203.40 and cases cited.) Good will of a business, of course, is usually higher where the working proprietor or partner remains active in the business.

The value of this business was determinable. Respondent was clearly in the best position to establish it but made no effort to do so. Neither did he apply any of the tests to determine the respective portions of the earnings which were separate or community.

''The time, efforts, and skill of the husband are

assets of the community and when they are used for the enrichment of the separate property of the husband, the community must be compensated.'' (*Strohm* v. *Strohm,* 182 Cal. App.2d 53, 62 [5 Cal.Rptr. 884]; see also *Logan* v. *Forster,* 114 Cal.App.2d 587, 599 [250 P.2d 730].)

It has been shown the earnings of this business ($41,000 a year) are an important factor in determining its value. The courts have employed two methods ''to the allocation of earnings in such cases: 1. to allow interest[1] on the capital investment of the business, allocate such interest as separate property, and treat the balance as community earnings attributable to the efforts of the husband . . .; 2. to determine the reasonable value of the husband's services in the business, allocate that amount as community property, and treat the balance as separate property attributable to the normal earnings of the business.'' (*Tassi* v. *Tassi,* 160 Cal.App. 2d 680, 690 [325 P.2d 872].) The latter formula was applied in *Gilmore* v. *Gilmore,* 45 Cal.2d 142 [287 P.2d 769]. In this regard it is to be noted, however, that community income, rather than income from the separate property of one of the spouses, is presumed to be used for community living, and other expenses. (*Gilmore* v. *Gilmore, supra,* at p. 149; *Kenney* v. *Kenney,* 128 Cal.App.2d 128, 136 [274 P.2d 951].) To the extent, therefore, that living expenses are proved they should be deducted in the application of the formulas above referred to. Here neither method was applied either as a guide or otherwise, since there was no evidence of a rate of interest which respondent's premarital investment well secured would have earned. Nor was there a determination of the reasonable value of the husband's services—although such must have been considerable to have built up a good will to produce a net profit of $41,000 annually out of such a modest original capital investment. Nor was there evidence from which community living expenses throughout the marriage could have been determined or even estimated.

What has been stated above is not intended to imply that application of any particular formula is inflexible or mandatory. The court may select whatever method of determination will achieve substantial justice. (*Tassi* v. *Tassi, supra,* p. 691; *Logan* v. *Forster, supra,* pp. 599, 600.) In the

---

[1]It has been stated that where a business is profitable the rate of interest should be that of ''a long investment well secured.'' (*Pereira* v. *Pereira,* 156 Cal. 1, at p. 7 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880].)

instant case, however, there was no evidence from which the court could have applied the suggested or any other formulas, and it seems inescapable that the court merely determined, we think arbitrarily, that because respondent owned the shell of a business at the time of his marriage, it was all his separate property—however much its assets may have multiplied due to his labor and skill.

What has been said above demonstrates that the presumption of community character of the business was not overcome. Actually it was strengthened by the acts of the parties, indicating they regarded it as community. Profits of the business were used to acquire all the property which the spouses have accumulated. It was stipulated that all of this was community property, "which indicates strongly that the parties after their marriage regarded said . . . business and the profits thereof as community property." (*Mueller* v. *Mueller, supra,* at p. 250.) The fact that there was no segregation of earnings of the business from the investments and that all expenses were paid from the business account also strengthens the presumption. (*Mueller* v. *Mueller, supra.*) These circumstances, however, are not conclusive. Respondent testified he considered the business his separate property and there was no agreement shown between the parties converting that portion which was separate into community. The trial court was not compelled from this evidence to find that the business was entirely a community asset. On the other hand, the evidence introduced does not justify a finding that it was all the husband's separate property. Determination of the question requires that it be retried.

Appellant's assignment of error in the court's failure to find on the issue of alimony must also be sustained. Appellant's right to, and need for, alimony was pleaded in the complaint, and denied by the answer. The issue was the subject of considerable testimony and appellant's counsel made it clear at the conclusion of the trial that appellant had not withdrawn her demand, so that a finding thereon would be necessary.

The determination of alimony is an issue of fact. (*Jones* v. *Jones,* 135 Cal.App.2d 52, 63 [286 P.2d 908].) In actions for divorce the trial court must file its decision and conclusions of law as in other cases. (*La Mar* v. *La Mar,* 30 Cal.2d 898, 900 [186 P.2d 678].) Respondent argues that "a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent

with the judgment, results by necessary implication from the express findings which are made." (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593].) He also argues that appellant waived the right to complain by not having taken advantage of the 1959 amendment of the Code of Civil Procedure, section 634, which provides, *inter alia*, that:

"If upon appeal . . . it appears that the court has not made findings as to all facts necessary to support the judgment . . . the court before which such appeal . . . is pending shall not infer that the trial court found in favor of the prevailing party on such issue if it appears that the party attacking the judgment made a written request for a specific finding on such issue. . . ."

Respondent cites a comment on this amendment in 34 State Bar Journal 639, to the effect that, before the amendment, appellate courts could and did infer needed findings "where there were other more general findings from which the omitted ones followed by necessary implication." The article says that under the amendment this may no longer be done if a specific finding is requested. It concludes: "If there has been no such request for specific findings, it seems that the reviewing court may continue to infer any specific findings needed to support the judgment *when such findings are necessarily implied by more general findings actually made.*" (Emphasis ours.)

Silence, however, is not a general finding from which a specific finding denying alimony can be *necessarily* implied. Failure by the trial court to make a finding on the issue of alimony was error and was not waived by appellant's failure to make written request for a specific finding. To hold that it did constitute a waiver would cause the code amendment, designed as a benefit for appellants, to become a trap-by-technicality for unwary appellants to prevent their appeals being heard on the merits.

Appellant's last assignment of error, the court's failure to award alimony, is persuasive. The trial court, notwithstanding its wide discretion in the matter of allowance of alimony, is nevertheless required to exercise it *judicially* under the provisions of Civil Code section 139 which refer to a "suitable allowance for support and maintenance . . . having regard for the circumstances of the respective parties. . . ." Here a marriage of 23 years' duration was terminated due to the husband's extreme cruelty. Normally, an

aggrieved wife is awarded alimony on the theory "that the husband entered upon an obligation which bound him to support his wife during the period of their joint lives, that by his own wrong he has forced her to sever the relation which enabled her to compel the performance of this duty, and that he is required to make compensation for the offense committed by him which has deprived her of the benefit of the obligation." (*Arnold* v. *Arnold,* 76 Cal.App.2d 877, 885-886 [174 P.2d 674].) We have had occasion to discuss these rules recently in *Brawman* v. *Brawman,* 199 Cal.App.2d 876 [19 Cal.Rptr. 106], under facts not dissimilar to those of the instant case.

Here, through no fault of appellant, respondent became interested in another woman. Appellant was 47 years of age at the time of trial. Although not physically disabled, she cannot do heavy work and should not be forced into the labor market after being a good and faithful wife to respondent for 23 years.

"A woman past middle age can seldom rehabilitate herself after a break in marriage relations and the courts may properly safeguard her financial future where the marriage is dissolved for the offense of the husband." (*Arnold* v. *Arnold, supra,* at p. 886; *Pope* v. *Pope,* 102 Cal.App.2d 353 [227 P.2d 867]; *Rose* v. *Rose,* 50 Cal.App.2d 432, 435 [123 P.2d 37].)

She was awarded the custody of the 16-year-old daughter and with the responsibility of caring for her appellant should not be compelled to seek outside employment. (*Mueller* v. *Mueller,* 144 Cal.App.2d 245, 254 [301 P.2d 90].) Appellant was awarded community property of a value of $144,964.57, of which approximately $110,000 is now, or can be diverted into, income-earning property. How this compares with the value of the property ultimately to be awarded to the husband depends upon the ultimate determination of the value of the community interest in the pharmacy business.

An alimony award is a comparative matter. For emphasis we quote again from Civil Code section 139 that it should be a "suitable allowance . . . having regard for the circumstances of the respective parties. . . ." The financial position of each of the parties before and after the divorce should be compared and contrasted. (See *Huntington* v. *Huntington,* 120 Cal.App.2d 705, 713-714 [262 P.2d 104].)

If the husband (who is here the guilty spouse) is to be awarded the pharmacy business, which presently without his too constant services nets him $41,000 a year, plus the income

from property worth $81,423.71 (or so much thereof as may be income producing) *his circumstances* will be rather good.

The circumstances of the wife (who is the innocent spouse) suffer by comparison. The property heretofore awarded to her is unlikely to yield, safely invested, more than $5,500 a year—approximately $460 a month. This does not seem "suitable." All of these are matters which should be considered by the trial court. (See *Brawman* v. *Brawman, supra.*)

That portion of the decree which awards the divorce to plaintiff, awards to plaintiff the care, custody and control of the minor child of the parties, orders the payment of $200 per month for the support and maintenance of said minor child, and awards to plaintiff's attorney additional fees in the sum of $1,500 is affirmed. In all other respects the decree is reversed and the cause remanded to the superior court for a new trial in accordance with the views expressed herein.

Peek, P. J., and Schottky, J., concurred.