[Civ. No. 10448. Third Dist. Feb. 5, 1963.]

GEORGE J. RUPPERT, JR., et al., Plaintiffs and Respondents, v. RUTH E. JACKSON, Defendant and Appellant.

Rhodes, Sabraw & Avera, Gene Rhodes and Fred E. Avera for Defendant and Appellant.

Edward J. Anzore for Plaintiffs and Respondents.

PIERCE, P. J.—Defendant Ruth E. Jackson (hereinafter "Seller") appeals from a judgment for plaintiffs Ruppert (hereinafter "Buyers") decreeing specific performance of a contract of sale of real property.

Buyers by their complaint sued upon a "deposit receipt" which they alleged constituted an agreement by which Seller agreed to sell certain real property to them for $32,500. They alleged that they had offered to perform but Seller refused to convey. Seller's amended answer denied the existence of the contract. It particularized by alleging that certain named realtors and the firm by whom they were employed, all acting as duly authorized agents for Buyers, had prepared the deposit receipt agreement in question which Seller had signed with the understanding that it was not to be binding unless and until the transaction "in its entirety" had the approval of her attorney. In addition to pleading such approval as a condition precedent to the existence of the agreement, the pleading also alleged the same facts as constituting fraudulent representations by said agents (in one count) and as a unilateral mistake of fact by Seller (in another count).[1] Buyers' answer to Seller's cross-complaint admitted that said real estate agents and said firm were their agents but denied all further allegations.

Seller, by her appeal, does not urge an insufficiency of evidence to support the trial court's findings and its decree of specific performance. Her sole contention is that no specific findings were made on the issues of fraud and mistake for failure of which this court must reverse. Since respondent Buyers' answer to this contention is that findings adverse to Seller must necessarily be implied, we will review the evidence on these issues.

---

[1]These facts were alleged both by way of answer and cross-complaint. Also alleged was a mutual rescission of the contract by the parties. Substantial evidence, however, to support this latter contention is lacking in the record. Seller produced a tape recording of a conversation with Buyer George J. Ruppert in which he tried to induce Seller to go through with the deal and even suggested he would change the terms of the contract in certain respects if she would do so. There was an offhand remark that if the deposit check had been returned by the agent, Ruppert would forget the deal. No definite evidence established the check had, in fact, then been returned. In any event the discussion related was far too indefinite to justify any court in finding a rescission of the written contract. It may, therefore, be disregarded. (*Chamberlain* v. *Abeles*, 88 Cal.App.2d 291, 299 [198 P.2d 927]; *Petersen* v. *Murphy*, 59 Cal.App.2d 528 [139 P.2d 49].)

After several offers and counteroffers had been exchanged between the parties, Mr. Duval, one of Buyers' agents mentioned above, approached Seller with an offer by Buyers to purchase for $32,500. Several days later Duval presented Buyers' check for $1,000 as a deposit, together with a form of deposit receipt containing the terms of the agreement. This form was that day eventually signed by Seller. Before signing it, however, a provision was added by Duval as follows: "Subject to approval of escrow instructions and related papers by my attorney." Seller's signature immediately follows the added portion. Shortly thereafter Seller called Duval informing him that she, having talked with her attorney, did not want to go through with the sale. Her attorney also wrote the real estate firm stating that after examining the "proposal" submitted he was of the opinion it was neither fair nor equitable to Seller and that he could not, for that reason, approve the transaction. Efforts were made thereafter by Buyers to induce Seller to complete the sale; she persisted in her refusal and this suit followed.

No contention was made at the trial or could be made that there were any defects in the "escrow instructions and related papers." The transaction did not reach that point. Seller's position throughout the trial was that in her conversation with Duval preceding the signing of the deposit receipt she had insisted that her acceptance to Buyers' offer be conditional on the approval by her attorney *of the entire transaction*; that her attorney disapproved and that, therefore, no enforceable agreement existed. There was substantial evidence to support this contention. Since the agent, Duval, was the Buyers' authorized agent, any instructions by Seller transmitted to him regarding an attorney's approval of the entire transaction as a condition to the existence of the contract would have been, in legal effect, instructions to Buyers themselves and a misstatement in the written instrument would negate the existence of any contract. But there was also substantial evidence produced by Buyers contradicting this contention— in addition to the language of the instrument itself.

The trial court, after trial of the issues, found (in findings prepared by Buyers' attorney) that on May 20, 1959, the plaintiffs and defendant had entered into an agreement whereby the plaintiffs agreed to buy, and the defendant agreed to sell, the property therein described "that in accordance with said agreement the parties executed in writing a deposit receipt dated May 20, 1959." The findings then recite

the purchase price and terms of the agreement, the offer by plaintiffs (and their willingness and ability) to perform the agreement's terms, the demand for a conveyance and the defendant's refusal to convey. The conclusion of law is that plaintiffs are entitled to a judgment for specific performance.

There were no specific findings of the facts alleged by Seller in her affirmative defense and cross-complaint raising the question: Was it the intent that the entire transaction should be approved by Seller's attorney or was his approval merely to cover the "escrow instructions and related papers"? Neither were any "objections, counter-findings and requests for special findings" filed by Seller relating to that or any other issue. (See Code Civ. Proc., § 634.)

Respondent Buyers contend that, no such special request having been made, a finding against Seller on the issues discussed above must be implied from the general finding that the contract existed, and more specific findings were waived. We agree with that contention.

The requirement of findings has been a part of our Code of Civil Procedure since 1872. Prior to 1959, Code of Civil Procedure, section 632, read in part: "In giving the decision, the facts found and the conclusions of law must be separately stated." In 1959 the following sentence was added: "The statement of facts found shall fairly disclose the court's determination of all issues of fact in the case." (Stats. 1959, ch. 637, p. 2613.) The same legislative act amended Code of Civil Procedure section 634 to include the following:

"Within five days after . . . service [of proposed findings] any other party may serve and file objections, counterfindings and requests for special findings.

"If upon appeal or upon a motion under section 657 or 663 of this code it appears that the court has not made findings as to all facts necessary to support the judgment, or that the findings are ambiguous or conflicting upon a material issue of fact, the court before which such appeal or motion is pending shall not infer that the trial court found in favor of the prevailing party on such issue if it appears that the party attacking the judgment made a written request for a specific finding on such issue either prior to the entry of judgment or in conjunction with a motion under Section 663 of this code."

These amendments to the Code of Civil Procedure followed, and were the product of, a report of the Joint Judiciary Committee on Administration of Justice, acting on a five-year study by a committee of the California Bar Association to

make recommendations as to possible improvements in the matter of findings in nonjury civil cases. At a hearing of said Joint Judiciary Committee the chairman of said State Bar Committee (Harry W. Horton, Esq., of El Centro) had voiced objections to the existing code provisions on findings as follows:

"As interpreted by the courts, the only thing that is required of a trial judge is that he shall make findings of fact and conclusions of law, separately stated . . . but all a judge has to do is find the ultimate fact, and he need not resolve any questions of conflict in evidence. . . . Consequently, if the trial judge does not give you a finding of the facts on which the case turns, you just have no case on appeal. . . . [N]obody knows what the judge's decision is on the facts. There is no way under the present law to compel him to disclose the basis of his decision. Consequently, when a case gets up on appeal, there is no way of your presenting it, unless it turns on a simple proposition of law, or there is a complete absence of evidence." (Second Partial Report of the Joint Judiciary Committee on Administration of Justice on The Operation of the Courts transmitted May 26, 1959, page 65.)

■ We think the amendments to Code of Civil Procedure, sections 632 and 634 made as a part of the same act of the Legislature and to accomplish the same general purpose must be read together. This court has stated in *Galloway* v. *Downie*, 195 Cal.App.2d 348 [15 Cal.Rptr. 747], at page 353:

". . . The prohibition of section 634 of the Code of Civil Procedure against inferred findings applies if the party attacking the judgment requested a specific finding on the issue in question. (34 State Bar J., p. 638.) The purpose of the legislation was to compel trial judges to make findings on all material issues of fact. (34 State Bar J., p. 156; see *Lewetzow* v. *Sapiro*, 189 Cal.App.2d 841 [11 Cal.Rptr. 126].)"

In *Galloway* there had been objections to the proposed findings and a request for special findings. The findings there made were held to have been insufficient and the judgment was reversed.

In *Haldeman* v. *Haldeman*, 202 Cal.App.2d 498 [21 Cal. Rptr. 75], this court again had before it the question of sufficiency of findings where, in a divorce action an issue of the wife's right to alimony had been raised and no finding thereon had been made. But in *Haldeman* there had been

*no* objections made to the proposed findings and *no* request for special findings. There the respondent husband had urged this failure as a waiver of a right to complain. We held, however, that such a failure of request would only have that result if the matter upon which the trial court failed to find specifically *could be necessarily implied from the findings made.* And (on p. 507) we quoted from a comment in 34 State Bar Journal 639 as follows: " 'If there has been no such request for specific findings, it seems that the reviewing court may continue to infer any specific findings needed to support the judgment *when such findings are necessarily implied by more general findings actually* made.' "

Since a finding on an issue of alimony could not necessarily be implied from findings of fact showing the wife to be entitled to a divorce and findings affecting the ultimate disposition of the community property, the judgment was reversed.

 Here, there having been no request for special findings, we think that the matter under discussion *was* of such a nature that a finding adverse to Seller is necessarily to be implied by the general findings actually made.

The sole fact asserted by Seller which had any substantial evidence to support it and which constituted a defense to the action was, as we have shown, that there was an understanding between her and Buyers (by the agent's knowledge imputed to them) that before the deposit-receipt agreement was to have any binding effect it must have the approval of her attorney *in its entirety.* The writing itself, as stated above, did not state that. It stated that the right of attorney-approval extended only to the "escrow instructions and related papers." Therefore, when the court by its findings expressly found this deposit receipt was the agreement between the parties, this finding necessarily implied a true agreement to contemplate approval by the attorney as expressed in the written instrument, and not as asserted by Seller. And it does not matter that appellant Seller stated this contention in several different ways in her pleadings. For whether one applies her theory of unilateral mistake, or fraud, or failure of a condition precedent, the legal result is the same—no contract if the contention is believed; and a valid and binding contract if the contention is rejected.

Appellant Seller recites *San Jose etc. Title Ins. Co.* v. *Elliott,* 108 Cal.App.2d 793 [240 P.2d 41], where, in an action involving, as does the case at bench, a contract of purchase

and sale of real property, the court reversed a judgment upon the ground that the findings included no mention of an issue of fraud raised by substantial conflicting evidence and held that a finding against fraud could not be implied. But that case is distinguishable. There the issue of fraud involved an asserted misrepresentation as to an existing lease. Such a misrepresentation did not prevent the contract from coming into existence. It made it subject to rescission by the party defrauded. A finding, therefore, that the contract existed did not necessarily imply that there had been no fraudulent representation which would give to the Buyers (who were there the allegedly defrauded parties) the right to rescind.

■ We hold, therefore, and assert the rule, that whenever several defenses raised by a defendant resting upon several theories all involve the same facts and a general finding of ultimate fact actually made by the court necessarily rests upon a decision on those facts contrary to defendant's position, and no objections to the findings or request for special findings on said facts have been made by defendant, objection thereto is waived. This rule, we think, falls within the framework of legislative purpose contemplated by the 1959 amendments to sections 632 and 634 discussed above. The rule also fits the facts of this case.

■ It is to be noted in concluding this opinion that, although Seller's attorney had withheld his approval because it was his opinion the contract was unfair and inequitable, the trial court obviously did not deem the evidence showed it to be so. Its fairness was an indispensable condition to a court of equity in decreeing specific performance. (Civ. Code, § 3391, subds. 1, 2.)

The judgment is affirmed.

Schottky, J., concurred.