[Sac. No. 7810.   In Bank.   Jan. 11, 1968.]

ALEXIS GEORGE YAKOV, Plaintiff and Respondent, v. BOARD OF MEDICAL EXAMINERS, Defendant and Appellant.

Thomas C. Lynch, Attorney General, E. G. Funke, Assistant Attorney General, Hubert O. Bower and Wilbur B. Thayer, Deputy Attorneys General, for Defendant and Appellant.

Miller, Ford & O'Neal and Charles J. Miller for Plaintiff and Respondent.

TOBRINER, J.—Subsequent to Dr. Yakov's conviction on nine counts of violation of section 4227 of the Business and Professions Code (furnishing dangerous drugs without a prescription), the Board of Medical Examiners filed a statement of charges, alleging *inter alia* that the doctor was guilty of conduct involving moral turpitude. After a hearing in which the doctor represented himself, the board adopted the hearing

officer's proposed decision revoking Dr. Yakov's medical certificate.

Dr. Yakov then petitioned the Superior Court of Sacramento County for a writ of mandate under section 1094.5 of the Code of Civil Procedure. That court concluded that the finding of moral turpitude was not sustained by the weight of the evidence. Because of the impossibility of determining the extent to which the board's finding of moral turpitude contributed to its decision, the trial judge annulled the order, remanding the cause to the board for redetermination of the penalty.

On the board's appeal to this court, the question centers on the propriety of the trial court's holding that the weight of the evidence does not support a finding of moral turpitude. As we shall explain, in this type of case the trial court's duty is to undertake an independent review of the evidence; our function on appellate review is solely to decide whether credible, competent evidence supports that court's judgment. Since the record contains facts which sustain the decision that the doctor's conduct did not involve moral turpitude, we must affirm.

On June 12, 1963, Virginia Duran, a state agent posing as a patient, went to Dr. Yakov's office for treatment and purchased a supply of amphetamine sufficient for two months' weight control treatment. Acceding to agent Duran's repeated requests, Dr. Yakov also sold her a four-month supply on June 19, a five-month supply on June 25, an eleven-month supply on July 2, and a fifteen-month supply on July 10. Dr. Yakov sold to Jeannie Moffat, also a state agent under orders to pose as a patient and attempt to induce the doctor to sell her large quantities of weight reducing pills, a three-month supply of amphetamine on May 16, 1963, a two-month supply on June 5, a three-month supply on June 12, and a ten-month supply on June 26. On July 10, Dr. Yakov sold a six-month supply to Alice Orr, also in the employ of the state.[1]

---

[1]The sales to these three agents, in addition to generating this license revocation proceeding, served as the ground for the successful prosecution of Dr. Yakov under section 4227 of the Business and Professions Code. That section provides: ''No person shall furnish any dangerous drug . . . except upon the *prescription* of a physician, dentist, chiropodist or veterinarian.'' (Italics added.) Amphetamines are classified as dangerous drugs by section 4211, subdivision (c), of the Business and Professions Code. The prosecution under section 4227 apparently proceeded on the basis that, even though Dr. Yakov was a medical doctor, he engaged in selling pills commercially rather than ''prescribing'' them within the meaning of the statutory exception.

Admitting these facts, Dr. Yakov testified that at no other time had he ever sold a patient more than a one-month supply of amphetamine. About 500 of his patients signed a statement to the effect that none had ever received more than a one-month supply. Although the board apparently attempted to find a regular patient of Dr. Yakov who would testify to the contrary, none was produced at the hearing.

The three state agents testified that, although Dr. Yakov sometimes weighed them, he did not take their blood pressure or otherwise examine them. Dr. Yakov responded that, pursuant to his general practice, he gave all of them a physical examination. Moreover, several of his patients testified that the doctor had always examined them before prescribing pills. The doctor conceded, however, that Moffat had asked for, and been given, pills for two of her friends whom he had not examined.

Dr. Yakov testified that the pills which he dispensed were no more dangerous than coffee or Coca Cola. Citing a reference work to the effect that amphetamine is not habit-forming, the doctor attested that his patients could stop taking the pills at will. Several of his patients testified to cessation of the use of the pills for extended periods of time. The strongest evidence to the contrary consisted of a statement by a chemist agent with the Bureau of Narcotics Enforcement that, although amphetamine was not narcotic, it was habit-forming in the same sense as cigarettes.

Dr. Yakov testified that he practiced in a neighborhood of poor people, devoted his life to the underprivileged, and had never sent a bill to a patient. Explaining that he began to sell these weight reducing drugs only when his patients complained of the high drugstore charge, he stated that he sold the pills at one-half that price. Some patients testified that the charges for Dr. Yakov's services, including the pills, amounted to substantially less than those of other doctors.

■ [See fn. 2] On this evidence the superior court rejected, as not sustained by the weight of the evidence, the medical board's finding of moral turpitude.[2] The court's opin-

---

[2]The court rendered the following findings regarding the findings of the board: "III. The finding that Petitioner was guilty of moral turpitude is not supported by the weight of the evidence. IV. To the extent that the findings with respect to extenuation or mitigation are based upon the finding that petitioner was guilty of moral turpitude, such findings likewise are not supported by the evidence. V. This Court cannot ascertain from the record whether the same penalty would have been imposed had the Respondent recognized the absence of evidence sufficient

ion stated: "Petitioner has engaged in the practice of medicine of medicine [sic] for twenty-six (26) years, during which period of time he has had no disciplinary action or complaints against him. He minimizes in his own mind the theory that the drugs he dispensed were 'dangerous', comparing them to coffee, coco [sic] cola, etc. The record falls short of showing a profit motive in Petitioner's conduct—and there is much credence to Petitioner's contention that his conduct was prompted by affirmative action of Respondent's agents. Not a single instance of any violation is shown except those mentioned."

In reviewing this matter, the settled rule of *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301 [196 P.2d 20], requires us to sustain the trial court's decision if it is supported by credible, competent evidence. In *Moran*, the Board of Medical Examiners, having found the doctor to be guilty of unprofessional conduct for prescribing narcotics, suspended his medical certificate for a year. Upon review of the board's order, the superior court, solely on the basis of the evidence introduced before the board, rendered factual findings in favor of petitioner and ordered the decision annulled. Affirming the judgment of the superior court, this

---

to support the finding that Petitioner was guilty of moral turpitude and (to the extent set forth in Finding IV above) the findings with respect to extenuation and mitigation."

Although more specific findings would clearly have been preferable, the board neither requested special findings nor objected to the generality of those rendered. Under these circumstances the board waived any objection based upon specificity, and this court must assume that a finding of ultimate fact includes a finding of all probative facts necessary to sustain it (Code Civ. Proc., § 634; *Ruppert* v. *Jackson* (1963) 212 Cal.App.2d 678, 683 [28 Cal.Rptr. 467]; *Corrigan* v. *Stiltz* (1965) 233 Cal.App.2d 381, 384 [43 Cal.Rptr. 548]).

Since the findings, though general, suffice to show that the court passed upon the central issue in dispute, the instant situation is distinguishable from *Almaden-Santa Clara Vineyards* v. *Paul* (1966) 239 Cal.App.2d 860 [49 Cal.Rptr. 256]. There the Court of Appeal held that the trial court "made no factual determination that would settle the dispute and did not decide one way or the other whether Almaden paid Vogel in full." (P. 867.) The validity of the suspension of Almaden's license turned on that issue. An inspection of the record there convinced the appellate court that "it was the purpose and intent of the [trial] court *not* to pass upon the pivotal issue in the case." (P. 868.) In the instant case the trial court did pass upon the pivotal issue of moral turpitude; the record confirms that it did so, and the court's opinion sets forth its reasons for concluding against the doctor's guilt of moral turpitude. Thus, the holding in *Tringham* v. *State Board of Education* (1958) 50 Cal.2d 507, 508 [326 P.2d 850], a case involving the revocation of teaching credentials, applies here: "The record shows that the court exercised its independent judgment on the evidence and determined that the board's order was not supported by the weight of the evidence."

court held that the trial court was " 'authorized by law to exercise its independent judgment on the evidence' " and that " 'the ultimate power of decision rests with the trial court.' " (32 Cal.2d at p. 308.) Since its inception in 1948, the *Moran* rule has been consistently applied to describe the scope of review of decisions not only by the Board of Medical Examiners[3] but also by other statewide administrative agencies that are without constitutional authority to exercise judicial powers.[4]

■ As we stated in *Moran, supra,* 32 Cal.2d 301, 308, quoting from *Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183] : " ' "In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible . . . . When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." ' " " "The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict." (*Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689] ; *Moran* v. *Board of Medical Examiners, supra,* 32 Cal.2d 301, 308.) Thus, pursuant to *Moran,* the question before this court turns upon whether the evidence reveals substantial support, contradicted or uncontradicted, for the trial court's conclusion that the weight of the evidence does

---

[3]See *Cooper* v. *Board of Medical Examiners* (1950) 35 Cal.2d 242, 246 [217 P.2d 630, 18 A.L.R.2d 593]; *Whitlow* v. *Board of Medical Examiners* (1967) 248 Cal.App.2d 478, 483 [56 Cal.Rptr. 525]; *Morris* v. *Board of Medical Examiners* (1964) 230 Cal.App.2d 704, 711 [41 Cal. Rptr. 351, 12 A.L.R.3d 1201]; *Sunseri* v. *Board of Medical Examiners* (1964) 224 Cal.App.2d 309, 313 [36 Cal.Rptr. 553]; *Bernstein* v. *Board of Medical Examiners* (1962) 204 Cal.App.2d 378, 385 [22 Cal.Rptr. 419]. Of course the justification for the *de novo* review by the trial court established by *Moran* is particularly strong where, as in the present case, the various proceedings will determine so vital a question as a doctor's right to practice his profession (cf. *Bernstein* v. *Board of Medical Examiners, supra,* 204 Cal.App.2d 378, 385).

[4]See, e.g., *Nardoni* v. *McConnell* (1957) 48 Cal.2d 500, 503 [310 P.2d 644] (Insurance Commissioner); *Almaden-Santa Clara Vineyards* v. *Paul, supra,* 239 Cal.App.2d 860, 866 (Director of Agriculture); *Caro* v. *Savage* (1962) 201 Cal.App.2d 530, 538 [20 Cal.Rptr. 286] (Real Estate Commissioner); *Maywood Glass Co.* v. *Stewart* (1959) 170 Cal.App.2d 719, 723 [339 P.2d 947] (Unemployment Insurance Appeals Board); *Beach* v. *Contractors State License Board* (1957) 151 Cal.App.2d 117, 120 [311 P.2d 51] (Contractors State License Board); *Ashdown* v. *State of California Dept. of Emp.* (1955) 135 Cal.App.2d 291, 299 [287 P.2d 176] (Department of Employment); see, Kleps, *Certiorarified Mandamus Reviewed* (1960) 12 Stan.L.Rev. 554.

not show Dr. Yakov to be guilty of conduct involving moral turpitude.

[See fn. 5] We recognize that juristic definitions of moral turpitude have been general. For example, this court has defined moral turpitude as ''an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man . . . . '' (*In re Boyd* (1957) 48 Cal.2d 69, 70 [307 P.2d 625].)[5] Other than specifying that conduct involving fraud, perjury, and intentional dishonesty for personal gain falls within these broad definitions (*Hallinan* v. *Committee of Bar Examiners, supra,* 65 Cal.2d 447, 459; *In re Hallinan* (1954) 43 Cal.2d 243, 247 [272 P.2d 768]), the courts have not narrowed the inquiry by promulgating more specific definitions. Accordingly, we must focus on the general question whether the totality of the facts as found by the trial court, which we must accept under *Moran,* indicates such disregard by Dr. Yakov for the welfare of his patients as to demonstrate ''baseness, vileness or depravity.''[6]

The record supports the trial court's conclusion that Dr. Yakov did not prescribe the drugs for a personal profit motive; that his personal motivation was benign rather than evil. The motivation of the doctor crucially affects any finding of his moral turpitude. Thus in *Hallinan* v. *Committee of Bar Examiners, supra,* 65 Cal.2d 447, 461, this court held

---

[5]Not every violation of the criminal law constitutes an act of moral turpitude. (*In re Rothrock* (1940) 16 Cal.2d 449, 454 [106 P.2d 907, 131 A.L.R. 226]; *Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447, 459 [55 Cal.Rptr. 228, 421 P.2d 76].) Indeed, section 2383 of the Business and Professions Code necessarily assumes this conclusion by authorizing the medical board to examine the circumstances of the crime in order to determine whether it involves moral turpitude. The furnishing of dangerous drugs without a prescription may or may not be an act of moral turpitude, depending on the circumstances. On an issue closely related to the instant question, this court has held that the offense of furnishing an alcoholic beverage to a person under the age of 21 does not always involve moral turpitude. (*Lorenz* v. *Board of Medical Examiners* (1956) 46 Cal.2d 684, 687 [298 P.2d 537].)

[6]The purpose of an action seeking revocation of a doctor's certificate is not to punish the doctor but rather to protect the public. (Cf. *In re Rothrock, supra,* 16 Cal.2d 449, 454 (disbarment); *Hallinan* v. *Committee of Bar Examiners, supra,* 65 Cal.2d 447, 462 (certification for admission to the bar).) While revocation of a certificate certainly works an unavoidable punitive effect, the board can seek to achieve a legitimate punitive purpose only through criminal prosecution. Thus, in this proceeding the inquiry must be limited to the effect of Dr. Yakov's actions upon the quality of his service to his patients.

that whether "activities involve moral turpitude is dependant upon the . . . motivation of the violator." We shall point out in more detail the elements of Dr. Yakov's motivation.

Both Dr. Yakov and his patients testified to the fact that he sought to assist them through the practice of selling pills at amounts substantially below the drugstore price. The board failed to introduce any evidence that the doctor enjoyed an inordinate, or indeed any, profit from his sales at the lower price. The board did not prove, or attempt to show, that the doctor's motive was evil.

Dr. Yakov's testimony reveals that, although he recognized potential danger from any drug used incorrectly, he considered amphetamine no more dangerous or habit-forming than coffee or Coca Cola. Even assuming a lack of sound medical judgment in Dr. Yakov's appraisal of the physical consequences of the pills, we find no evidence of subjective intent other than to serve the best interests of his patients. He testified, as did many of his patients, that the pills successfully brought about weight reduction.

Dr. Yakov's sale of the pills to Moffat for her friends without examining the possible recipients, as well as his sale to Duran of several months' supply at weekly intervals, could sufficiently support a finding of unprofessional conduct under section 2391.5 of the Business and Professions Code. Viewing the facts, as required by *Moran*, in support of the trial court, however, we hold as a matter of law[7] that the doctor's conduct did not exhibit such "baseness, vileness and depravity" as to constitute moral turpitude.

In summary, the doctor's furnishing of amphetamine drugs, motivated not to garner a personal profit but rather to treat patients for excessive weight, hardly reached the sinister sphere of moral turpitude. This record does not support a reversal of the trial court's judgment, freighted as it is with the presumption of propriety and weight that such a ruling carries in this kind of litigation.

---

[7] The determination of whether or not certain conduct involves "moral turpitude" is a "question of law" in the sense that it should be decided by an appellate court. (*In re McAllister* (1939) 14 Cal.2d 602, 604 [95 P.2d 932]; *In re Clark* (1959) 52 Cal.2d 322, 328-329 [340 P.2d 613]; *Otash* v. *Bureau of Private Investigators* (1964) 230 Cal.App.2d 568, 571 [41 Cal.Rptr. 263].) This rule merely exemplifies the generally accepted proposition that the ultimate conclusion to be drawn from undisputed facts is a question of law for an appellate court. (*San Diego Trust & Sav. Bank* v. *San Diego County* (1940) 16 Cal.2d 142, 153 [105 P.2d 94, 133 A.L.R. 416]; *Southern Pac. Co.* v. *Pillsbury* (1915) 170 Cal. 782, 783-784 [151 P. 277, L.R.A. 1916E 916]; Brown, *Fact and Law*

The right to practice one's profession is sufficiently precious to surround it with a panoply of legal protection. Perhaps one rationalization for *Moran* lies in its prophylactic requirement that in the instant situation the appellate court must accept the facts as found by the trial court, a judicial tribunal, rather than by the disciplinary board, an administrative agency. Following that precept we cannot sustain this revocation of a license to practice medicine based upon claimed moral turpitude.

The trial court's judgment annulling the board's decision and remanding the proceedings for redetermination of the penalty is affirmed.

Peters, J., Burke, J., Sullivan, J., and Peek, J.,* concurred.

TRAYNOR, C. J., Concurring.—My views with respect to judicial review of administrative findings of fact under Code of Civil Procedure, section 1094.5, are set forth in dissenting opinions in *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 315 [196 P.2d 20], and *Southern California Jockey Club, Inc.* v. *California Horse Racing Board,* 36 Cal.2d 167, 178 [223 P.2d 1]. These views remain unchanged, but since a majority of the court adhere to the *Moran* case, I concur in the judgment under the compulsion of that case.

McCOMB, J.—I dissent. I would reverse the judgment with directions to the trial court to discharge the alternative writ and deny the petition for a writ of mandate for the reasons expressed by Mr. Justice Bray in the opinion prepared by him for the Court of Appeal in *Yakov* v. *Board of Medical Examiners* (Cal.App.) 58 Cal.Rptr. 644.

Appellant's petition for a rehearing was denied February 8, 1968, and the opinion was modified to read as printed above. Peek, J.,* sat in place of Mosk, J., who deemed himself disqualified. McComb, J., was of the opinion that the petition should be granted.

---

*in Judicial Review* (1943) 56 Harv.L.Rev. 899, 901; Stern, *Review of Findings of Administrators, Judges and Juries: A Comparative Analysis* (1944) 58 Harv.L.Rev. 70, 112, 117.) Thus, once the ''facts'' are established pursuant to the *Moran* rule, this court must reach an independent decision as to whether Dr. Yakov's conduct demonstrated moral turpitude.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.