[Civ. No. 93. Fifth Dist. June 4, 1962.]

WILLIAM GEORGE BERNSTEIN, Plaintiff and Appellant, v. BOARD OF MEDICAL EXAMINERS, Defendant and Respondent.

Charles J. Katz and Harry L. Meyers for Plaintiff and Appellant.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, and W. B. Thayer, Deputy Attorney General, for Defendant and Respondent.

STONE, Acting P. J.—This is an appeal from a judgment denying a petition for writ of mandate seeking to annul the decision and order of respondent, Board of Medical Examiners of the State of California, revoking the license of appellant to practice medicine in the State of California.

A 16-year-old high school girl who had engaged in acts of sexual intercourse with several different boys, was brought to the office of appellant, a psychiatrist licensed to practice in the State of California. He accepted her as a patient and undertook to treat her for sexual promiscuity. He was convicted of statutory rape by reason of having sexual intercourse with her himself during the course of treatment. After conviction upon trial to a jury, appellant was sentenced to serve six months in the county jail. The judgment was appealed, and affirmed.

Subsequently respondent board commenced proceedings for revocation of appellant's license, pursuant to the following sections of Business and Professions Code: 2360, which provides that a certificate may be revoked for unprofessional conduct; 2361, which directs the board to take action against any licenseholder who is guilty of unprofessional conduct which has been brought to its attention; and 2372, which prescribes the procedure for revocation or suspension of certificate. The proceeding was held before a hearing officer, who filed a recommendation and proposed order of revocation of appellant's license; the board approved the recommendation and the order of revocation was made. Appellant filed a petition for writ of mandate in the Fresno County Superior Court, the matter was heard, and the court sustained the action of the board and denied the writ. This appeal followed.

The basis for depriving appellant of his license to practice medicine was the charge that he had been convicted of a misdemeanor involving moral turpitude. The pertinent statute is Business and Professions Code, section 2383, which provides in part: "The record of conviction shall be conclusive evidence only of the fact that the conviction occurred. The board may inquire into the circumstances surrounding the commission of the crime in order to fix the degree of discipline or to determine if such conviction is of an offense involving moral turpitude."

Appellant's first ground of appeal is that the crime of statutory rape does not, per se, involve moral turpitude. While this may be true in general, the record of the criminal trial reflects that statutory rape involved moral turpitude in this case. As the quoted portion of section 2383 discloses, the board is authorized to inquire into the circumstances surrounding the commission of the crime. The victim, a 16-year-old school girl, was brought to appellant's office to be treated for sexual promiscuity. Appellant held himself out as a psychiatrist licensed by the State of California to rehabilitate such people. It was he who was to provide insight and to give direction, guidance and counseling to the girl patient. His license placed him in this position of trust, a trust which he violated, as disclosed by the record of the trial and the jury's verdict of guilty.

Appellant's argument that statutory rape does not necessarily constitute or involve moral turpitude serves to answer his argument that section 2383 of Business and Professions Code is unconstitutional because it does not prescribe standards for revocation of a physician's license. The very fact that all crimes do not involve moral turpitude renders impossible the drafting of a statute with fixed standards. For this reason section 2383 directs the board to look to the circumstances surrounding the commission of the particular crime. It simply rests the question of moral turpitude upon the facts peculiar to each case and makes no attempt at prevision.

The general nature of Business and Professions Code section 2383 points up appellant's contention that the accusation insufficiently describes the nature of the charge against him. If we understand appellant's argument aright, it is that from reading the accusation he was unable to understand that he was charged with the conviction of a misdemeanor involving moral turpitude. Since we have held that section 2383 of

Business and Professions Code necessarily must be broad in scope as it would be impossible without the gift of divination to draft a statute detailing all possible situations encompassing moral turpitude, it naturally follows that the accusation must be specific. ██ Certainly a man has the right to know the charge against him, the charge against which he must defend himself. Therefore the enabling statute, Business and Professions Code, section 2383, which is general in nature, must be complemented by a specific charge in the accusation issued pursuant thereto. ██ ██ The accusation filed against appellant reads as follows:

"IV That the respondent has been convicted of an offense involving moral turpitude, contrary to the provisions of section 2383 of the Business and Professions Code of the State of California, in the following respects:

"That on or about the 29th day of August, 1958, the respondent, William George Bernstein, in a proceeding then pending before the Superior Court of the State of California, In and For the County of Fresno, entitled, 'The People of the State of California, Plaintiff, vs. William G. Bernstein, Defendant,' No. 17808, was convicted by a jury of violation of section 261.1 [261, subd. 1] of the Penal Code of the State of California (statutory rape; the charge, in brief, was that subject, while treating Madeline Matthews, aged 15, for sexual promiscuity, did commit sexual relations with her in his office); that as a result of said conviction respondent was sentenced to six months in the County Jail, less 16 days already served in custody; that respondent filed a Notice of Motion for Appeal, such appeal being denied and sentence commenced on August 12, 1959.

"That said conviction is a conviction of a crime involving moral turpitude."

A point is made of the fact that the charge relates the age of the minor as 15 years, while the record discloses that she was 16 years of age at the time the act was committed. This is of no consequence since the girl was well under the statutory age of 18; the patient-doctor relationship is not changed in the least. The critical facts are that at the time the accusation was served upon appellant he had been arrested, tried by a jury, and convicted of the charge of statutory rape of his minor patient. The judgment had been affirmed on appeal, he had been sentenced for the crime, and the sentence had been executed. To argue that after reading the charging portion of the accusation set forth above, he was unable to under-

stand the nature of the charge against him is to catch at straws.

█ Appellant asserts that he was denied due process because the hearing officer was of the opinion that statutory rape involved moral turpitude per se. That is to say, he did not make his determination from an examination of the circumstances of the case. Appellant concedes that admission into evidence of the transcript of the trial made the circumstances of the case available to the hearing officer. He asserts, however, that the hearing officer did not review this evidence, or that if he did so he restricted himself to considering it for the purpose of determining the degree of punishment. Appellant predicates this argument largely upon the following statement made by the hearing officer at the time the transcript of the criminal trial was offered for identification: "What we have here is a clear case where the crime in question is one involving moral turpitude . . . ; the only real issue before me as a Hearing Officer is whether a probationary order should be recommended to the board."

The record reflects the introduction into evidence of the following documents: (a) the information filed in the criminal action; (b) reporter's transcript of the trial in the superior court; (c) judgment and sentence of the court; (d) stipulation of counsel that judgment of conviction was affirmed by the District Court of Appeal. When these exhibits were offered in evidence, the following statements were made to the hearing officer by Mr. Meyers, counsel for appellant, and by Mr. Thayer, counsel for the board:

"Mr. Meyers: Now, with this transcript being in evidence, I presume that means that the testimony as given by Doctor Bernstein, the respondent, will be given here exactly the same as it was at the trial and is considered so. Am I right?

"Mr. Thayer: Yes. Let me make myself clear. I don't wish to argue the case at this point because we will do that a little later; but there will, of course, be argument concerning whether or not the particular crime here in fact involved moral turpitude. There will also be a duty upon the Board to fix a penalty. If it is decided by the Hearing Officer after argument in the matter, by any chance, that this does not involve moral turpitude on its face, then of course the Board is entitled to look to the circumstances surrounding and concerning the conviction; and, in any event, they are entitled under the present statute to the complete circumstances in assessing a just penalty. So our stipulation, as I understand

it now, allows the Board—if it is decided essential to look to the transcript for the circumstances, they may do so—either for the penalty to be assessed or the question of moral turpitude.

"Mr. Meyers: That's right.

"Hearing Officer: Very well, *subject to the expressed stipulation* of counsel, the transcript will be considered in that light." (Emphasis added.)

The record further reflects that after the matter was argued the hearing officer ordered it submitted, and that 18 days elapsed before he filed his proposed order and recommendation. The inference which appellant would draw from the statement of the hearing officer is thus refuted by the proceedings which followed the statement. On the complete record before us, we cannot hold that the hearing officer failed to consider the circumstances of the offense pursuant to stipulation of counsel. Furthermore, in the absence of substantial grounds indicating otherwise, we must presume that the hearing officer considered all of the evidence of the case, including the transcript of proceedings in the trial court.

 Appellant makes the additional contention that the members of the board did not consider the evidence. This statement is factually correct, since the hearing officer sent a proposed order and a recommendation to each board member, who voted thereon without reviewing the entire record. This procedure follows subdivision (b), section 11517, Government Code, which provides:

"If a contested case is heard by a hearing officer alone, he shall prepare a proposed decision in such form that it may be adopted as the decision in the case. A copy of the proposed decision shall be filed by the agency as a public record and a copy of the proposed decision shall be served by the agency on each party in the case and his attorney. The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision."

It is appellant's contention that regardless of the code section, such practice amounts to denial of due process. This same question was raised in *Kramer* v. *State Board of Accountancy,* 200 Cal.App.2d 163 [19 Cal.Rptr. 226], and the court held, at page 174:

"It is further contended that the board's action in adopting the proposed decision of the hearing officer without familiarizing itself with the evidence on which the proposed findings

were based, and without affording appellants an opportunity to appear before it to argue and present additional evidence was a denial of due process. Section 11517, subdivision (b) of the Government Code reads in part: 'If a contested case is heard by a hearing officer alone, he shall prepare a proposed decision in such form that it may be adopted as the decision in the case. . . . The agency itself may adopt the proposed decision in its entirety. . . .' In *Hohreiter* v. *Garrison, supra* [81 Cal.App.2d 384, 395-401 (184 P.2d 323)], it was held that, properly interpreted, this means that the administrative agency may adopt the proposed decision without reading or otherwise familiarizing itself with the record, and this is not a violation of due process." (See also *Strode* v. *Board of Medical Examiners*, 195 Cal.App.2d 291, 298 [15 Cal.Rptr. 879].) Thus there is no merit in appellant's contention.

 Finally, appellant's assertion that the transcript of the criminal proceedings was not considered by the individual board members cannot be grounds for reversal in view of the proceedings had in the superior court. Since the seriousness of depriving a man of his license to practice his profession is patent, the scope of trial court review of proceedings for this purpose is very broad. The case of *Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308 [196 P.2d 20], clearly holds that a trial court reviewing a proceeding for revocation of license pursuant to Code of Civil Procedure, section 1094.5, has the duty of reweighing the evidence and exercising its independent judgment on the evidence. This rule was approved in *Tringham* v. *State Board of Education*, 50 Cal.2d 507, 508 [326 P.2d 850].

The recent case of *Wahl* v. *Division of Real Estate*, 197 Cal.App.2d 97 [17 Cal.Rptr. 25], summarizes the position of an appellate court reviewing mandamus proceedings pursuant to section 1094.5, as follows, at page 100:

"On an appeal from the judgment of the superior court in a mandamus proceeding to review administrative action, where, as in the present case, the issue in the trial court was the sufficiency of the evidence to support the findings of the agency, and the superior court has exercised its independent judgment on the evidence, the appellate court will view the evidence in the light most favorable to the respondent. The appellate court will determine whether or not there is any substantial evidence, contradicted or uncontradicted, which will support the findings of the trial court. If there is any such evidence, the judgment of the trial court must be affirmed."

(See also *Southern Cal. Jockey Club, Inc.* v. *California etc. Racing Board,* 36 Cal.2d 167 [223 P.2d 1]; *Richards Realty Co.* v. *Real Estate Comr.,* 144 Cal.App.2d 357 [300 P.2d 893].) As we have heretofore related, there is ample evidence in the record to support the findings of the trial court. That the trial court reviewed all of the evidence, including the transcript of the trial of the criminal action, and that it made an independent determination from the evidence, is reflected by the following excerpt from the court's memorandum opinion: "A reading of the Reporter's Transcript which was admitted in evidence before the Hearing Officer and is before this court would leave little doubt about the specific offense involving 'moral turpitude.' "

The judgment is affirmed.

Brown, J., concurred.

Conley, P. J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied June 29, 1962. Conley, P. J., deeming himself disqualified, did not participate. Appellant's petition for a hearing by the Supreme Court was denied August 1, 1962.