[Civ. No. 61274. Second Dist., Div. Four. Mar. 23, 1982.]

JOHN W. DRESSER, Plaintiff and Appellant, v.
BOARD OF MEDICAL QUALITY ASSURANCE, Defendant and
Respondent.

508

COUNSEL

Haight, Dickson, Brown & Bonesteel, Michael J. Bonesteel, Roy G. Weatherup, Jerry M. Custis and William S. Harris for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Calvin W. Torrance, Deputy Attorney General, for Defendant and Respondent.

OPINION

McCLOSKY, J.—Appellant John W. Dresser, Ph.D., appeals from a judgment of the superior court denying him mandamus relief upon administrative review of Board of Medical Quality Assurance (hereafter Board or Committee) action revoking his license as a psychologist. He contends that: (1) the Board's decision is invalid because it was based entirely on past conduct, rather than evidence of Dr. Dresser's current fitness; (2) the Board's decision amounted to imposition of per se or strict liability, both of which are impermissible; (3) the evidence failed to support the finding that the alleged conduct was an "extreme departure" from local, professional standard; (4) the exclusion of Dr. Forer's testimony was prejudicially erroneous; and (5) the penalty of license revocation was grossly disproportionate to Dr. Dresser's alleged conduct.

## A. Facts and Nature of the Case

Appellant, a licensed psychologist, engaged in sexual relations with two of his clients during a period of time when each was in therapy with him for her psychosexual problems. The proposed decision of the administrative law judge who conducted the Board hearing, filed August 30, 1979, found that he had engaged in three acts of sexual intercourse and one act of oral copulation with his client, Starlyn F., during the period May 1974 until June 1975, and that he engaged in three acts of sexual intercourse with his client, Mary B., during the period September 1974 through December 3, 1974. The proposed decision of the administrative law judge adopted by the Board, found that said sexual relations with appellant caused harm and were detrimental to each of the two clients, were extreme departures from the standard of practice of psychotherapists as in the southern California area, found that cause for suspension or revocation of appellant's license existed pursuant to the provisions of former section 2960, subdivision (i) of the Business and Professions Code, in that appellant had been guilty of gross negligence as set forth in the respective findings,[1] and revoked appellant's license.

Appellant filed a petition in the superior court for a writ of mandate to compel the Board to set aside its decision. Following a hearing that court gave judgment denying a peremptory writ of mandate. This appeal is from that judgment.

## B. Standard of Review

■ In cases involving the Board's decision to revoke a professional license, the independent judgment standard is the standard to be used by the superior court except as to the determination of the penalty imposed. Thus in this case, the trial court had to exercise its independent judgment on the evidence. (Code Civ. Proc. § 1094.5, subd. (c) and *Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67, 69 [64 Cal.Rptr. 785, 435 P.2d 553].) This court's standard of appellate review is stated in *Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 577-578 [146 Cal.Rptr. 653] as follows: "Where, ... the trial

---

[1]At that time, section 2960 of the Business and Professions Code provided in pertinent part: "The committee may order ... the revocation of, or imposition of probationary conditions upon, a license for any of the following causes: '... (i) Being grossly negligent in the practice of his profession....'" (That subdivision has since been relettered.)

court has rendered its independent judgment following a review of the evidence presented at the administrative hearing, the role of an appellate court is to determine only whether there is credible, competent evidence to support the trial court's judgment. [Citations omitted.] All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the judgment if possible; when two or more inferences can be reasonably deduced from the facts, this court is without power to substitute its deductions for those of the trial court." (See also, *Yakov* v. *Board of Medical Examiners, supra.*)

## C. Discussion

■ Appellant contends that appellant's license revocation is invalid unless based on current unfitness to practice, which unfitness must be shown by real evidence.

Discipline may not be imposed by the Board except as a means of protecting the public against unfit practitioners. (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375].) Appellant relies heavily on *Morrison*. His reliance on it, however, is misplaced. The Supreme Court in *Morrison* was concerned with a teacher who had a single, isolated and limited homosexual contact with a nonstudent. There was no criticism of his performance as a teacher in the record and, with the exception of that single incident, no suggestion that his conduct outside the classroom was other than beyond reproach. (*Ibid.*, at pp. 218, 236.) Further in *Morrison*, the Board called no medical, psychological or psychiatric experts to testify.

By contrast, Starlyn F. and Mary B. were both having psychological sexual problems and problems relating to men for which problems they sought appellant's aid as a psychologist. Part of that therapy involved his building up their trust in him, and their feeling that they had self-worth apart from being easily sexually accessible. During the course of his therapeutic relationship with them, but not as part of any treatment, appellant took advantage of their psychological vulnerability and had sexual relations with them. Each of these two clients testified as to the psychological harm they suffered as a result of these experiences, and psychological experts testified the clients were harmed by the experiences. Four experts were called by the Board and three of them testified directly and unequivocally that for a psychologist to engage in sex-

ual relations with a client is an extreme departure from the standard of practice in California.

Appellant argues that those four state experts were biased or unqualified and that if appellant's expert could have testified, he would have presented statistics showing that at least 17 percent of psychologists have or have had sexual relations with their clients. Based on the record the trial judge determined the experts were qualified and found the testimony of the two clients and the three experts credible, substantial and uncontradicted. There was thus credible, competent evidence to support the trial court's judgment.

■ Appellant contends that the Board's decision on October 29, 1979, and the judgment of the trial court were based on conduct of appellant in 1974 and 1975 and thus sought to punish him for long past conduct which was not evidence of his present fitness to practice his profession. In the *Morrison* case the court stated at page 235: "Thus an individual can be removed from the teaching profession only upon a showing that his retention in the profession poses a significant danger of harm to ... students, ... [W]e must inquire whether any *adverse inferences can be drawn from that past conduct as to petitioner's teaching ability,* ..." [Italics added.]

Past isolated acts unrelated to the licensee's profession cannot alone be the basis for discipline against a professional (see *Board of Education* v. *Commission on Professional Competence* (1980) 102 Cal.App. 3d 555, 561 [162 Cal.Rptr. 590] and *Brandt* v. *Fox* (1979) 90 Cal. App.3d 737, 747 [153 Cal.Rptr. 683]). Here, however, the acts of appellant were not unrelated to his profession, but occurred several times each with two clients during a period of time in which he was treating them for related sexual psychological problems, although those sex acts did not occur during therapy sessions.

Lest there be any question as to whether the meaning of the Supreme Court in *Morrison* was to exclude past conduct from a consideration of fitness, the Supreme Court in *Pettit* v. *State Board of Education* (1973) 10 Cal.3d 29, 34 [109 Cal.Rptr. 665, 513 P.2d 889, 78 A.L.R. 3d 1] explained that: "In *Morrison v. State Board of Education, supra,* 1 Cal.3d 214 ... [w]e made it clear, however, that in future cases revocation will be upheld if the evidence discloses that the teacher's retention within the school system 'poses a significant danger of harm to either students, school employees, or others who might be affected by his

actions as a teacher.' (P. 235.) The court suggested that a showing of significant 'harm' could be based upon adverse inferences drawn from the teacher's past conduct as to his probable future teaching ability, . . . [Citations.]"

Appellant cites *Brandt* v. *Fox, supra*, 90 Cal.App.3d at pages 746-747 as being a case close to the present facts. In *Brandt* a state agency denied an application for a real estate license because the applicant had more than four years before, been convicted of one isolated incident of distributing cocaine. The *Brandt* court held that one four-year-old isolated act, not involving "fraud or dishonesty in any fundamental sense" and unrelated to the field of licensure, did not constitute evidence of unfitness. The *Brandt* court explained: "Given the isolated nature of the incident, the fact that it occurred over four years ago, the lack of any evidence that plaintiff's subsequent conduct has been other than exemplary, or that such conduct bore a substantial relationship to the qualifications, functions or duties of, or otherwise rendered him unfit to engage in, the activity for which he sought a license, we must conclude that the Commissioner's decision to deny plaintiff's application was not supported by substantial evidence." (*Ibid.*, at p. 747.) In *Brandt* the appellant's conduct had nothing to do with the profession for which he sought the issuance of a license. It was a single incident in which his involvement was at least arguably peripheral. In the case at bench, by contrast, the conduct of appellant was inextricably bound up with his therapeutic relationship with these two clients to whom he was supposed to be affording psychological therapy, but upon each of whom he inflicted the injury each testified she suffered as the result of his repeated several sex acts with her and his breach of her trust in him.

In *Bernstein* v. *Board of Medical Examiners* (1962) 204 Cal.App.2d 378, 381 [22 Cal.Rptr. 419], the court affirmed the revocation of a psychiatrist's license to practice medicine using the following language: ". . . the victim, a 16-year-old school girl, was brought to appellant's office to be treated for sexual promiscuity. Appellant held himself out as a psychiatrist licensed by the State . . . to rehabilitate such people. It was he who was to provide insight and to give direction, guidance and counseling . . . . His license placed him in this position of trust, a trust which he violated . . ." The conduct of appellant in the case at bench is quite similar to the conduct of the psychiatrist in *Bernstein, supra*, and interestingly the *Bernstein* case was used in the *Morrison* case (at p. 236, fn. 44) as an example of past misconduct which *could* give rise to adverse inferences which would provide evidence of present unfitness.

Further, that unfitness to practice may be inferred from the very conduct itself. See *Board of Trustees* v. *Stubblefield* (1971) 16 Cal.App. 3d 820 [94 Cal.Rptr. 318] where a male teacher was found in a parked car with a female student with their private parts substantially exposed. He was dismissed from his teaching position for sexual conduct with the student and he claimed that the *Morrison* case required a reversal because of an alleged lack of evidence of unfitness. Another division of this court in language equally applicable here, disposed of that contention and affirmed the judgment finding him unfit and dismissing him, stating:

"Defendant contends that *Morrison* prohibits his discharge because the evidence adduced against him concerned only his conduct and did not expressly demonstrate how that conduct rendered him unfit to teach. [¶] ..., 'unfitness to teach' ... can be inferred from the very conduct itself. Defendant's actions in this case speak louder than any words of a psychiatrist." (*Stubblefield, supra,* 16 Cal.App.3d at pp. 825, 827.)

Appellant contends that the amendment to section 2960 by the addition of subdivision (n)[2] (eff. Jan. 1, 1980) means that subdivision (i) reflects legislative awareness of one of two things, (1) that the former statute (under which appellant was charged and tried) was too vague to inform persons of the prohibited activities, or (2) that the former statute did not establish such sexual activity as punishable conduct. These contentions, too, are without merit. *Cooper* v. *Board of Medical Examiners* (1975) 49 Cal.App.3d 931, 941 decided long before the new amendment, held that: "Section 2960, subdivision (i), provides that a psychologist's license may be revoked if he is 'grossly negligent in the practice of his profession.' The California Supreme Court in *Van Meter* v. *Bent Construction Co.* (1956) 46 Cal.2d 588, 594 [297 P.2d 644], defined 'gross negligence' as 'the want of even scant care or an extreme departure from the ordinary standard of conduct.'"

The *Cooper* court then affirmed a judgment denying a psychologist mandamus relief from the action of the Board of Medical Examiners (the predecessor to the present Board) which revoked his license for

---

[2]That newly added subdivision provides as one of the causes for suspension or revocation of a license: "(n) The commission of any dishonest, corrupt, or fraudulent act or any act of sexual abuse, or sexual relations with a patient, or sexual misconduct which is substantially related to the qualifications, functions or duties of a psychologist or psychological assistant."

gross negligence based upon allegations that he had furnished dangerous drugs and engaged in sexual and physical intimacies with three female clients.

It follows, and we therefore conclude, that section 2960, subdivision (i), extant at the times pertinent to the matter before us, was not impermissibly vague and that the amendment of section 2960 effective 1980 did not change the meaning of its subdivision (i) in any manner material to this matter before us. (See *Cooper* v. *Board of Medical Examiners, supra,* 49 Cal.App.3d 931.)

■ Appellant contends that the Board's decision amounted to an imposition of per se or strict liability. That contention is wholly without merit. The Board took evidence from the two affected clients and the expert witnesses and that testimony was uncontradicted. There was substantial evidence of psychological harm to both of those clients, amounting to gross negligence on appellant's part, in findings III and IV of the proposed decision of the administrative law judge, at a period of time during which appellant was affording each of them therapy for conditions related to sexual activities. It was related to the area of his licensure. The administrative law judge's proposed decision reflected findings based on the client's testimony and expert testimony that the acts of sexual intercourse and of oral copulation between the therapist and client were extreme departures from the standard of practice of psychotherapists in the southern California area, and determined that appellant "has been guilty of gross negligence as set forth in findings III and IV, herein above."

The Board adopted the proposed decision of the administrative law judge as its own and the court below exercised its independent judgment. Applying that correct standard it found the testimony of Starlyn F. and Mary B. and the experts who testified at the administrative hearing established that the psychological harm to each resulted from the violation of trust imposed in appellant. The trial court found that testimony credible and persuasive and that "the weight of the evidence" supported the Board. In the typewritten announcement of its intended decision the court found that although the appellant sought to impeach the testimony in a variety of ways, including the fact that both clients involved had filed civil actions against appellant, that one of the testifying experts was also engaged to testify in the civil trial, that various studies had been made both as to frequency of instances in which there had been sexual relations between psychologists and clients and the ef-

fects of such relationship, with varying findings, nevertheless found that their testimony stood as credible, substantial and uncontradicted. The trial judge also found that there was no substantial factual issue existing concerning appellant's having actually engaged in the charged conduct. Neither the Board nor the trial court limited its inquiry to question of commission of the charged acts. The trial court had substantial evidence on which it properly exercised its independent judgment in finding and holding that appellant violated section 2960, subdivision (i), and the fact that in his intended decision the trial judge used the words "again the weight of the evidence supports respondent" does not, as appellant asserts, distract from that court's proper exercise of his independent judgment.

The memorandum of intended decision of that court reflects the trial court's independent evaluation that the testimony of certain witnesses "appears credible and persuasive" and as to certain other experts' testimony that "their testimony stands as credible, substantial and uncontradicted." The trial court did not abuse its discretion.

Appellant complains that "there was absolutely no evidence of unfitness, and the trial court cited none." To the contrary, the memorandum decision of the trial court cited the testimony of the two clients and of the experts and the court's finding of it to be, as we have seen, credible and substantial. Further, the court read the administrative transcript and considered the evidence. The parties waived findings of fact and conclusions of law by failing to request them within the time provided by law. (See former Code Civ. Proc., § 632.)

The intended decision filed by the superior court recites that: "Findings were made [by the Committee] which established that [appellant's] acts occurred during the existence of a therapeutic relationship, occurred with a [sic] client, and cause [sic] harm to the client [sic]. There was no need to make a separate finding of 'unfitness,' but presumably the committee considered both the seriousness of the offense and its bearing upon his professional relationship in considering the degree of the penalty."

The whole record amply demonstrates that the administrative law judge and the superior court judge made a careful, reasoned inquiry into appellant's right to pursue his licensed profession. (See *Morrison v. State Board of Education, supra*, 1 Cal.3d at pp. 238-239.) The

Board's express findings and the memorandum decision of the superior court judge also demonstrate that if such a finding was required it may be inferred from the express findings in the proposed decision adopted by the Board and in the statements of intended decision by the trial judge.

■ Appellant's next contention is that the exclusion of the testimony of his only expert witness, Dr. Forer, was prejudicially erroneous. This contention is wholly lacking in merit. The contention in this regard comes down to the fact that appellant's motion for a continuance was denied by the administrative law judge and the assertion that that denial of the continuance amounted to an abuse of discretion.

The case was originally scheduled to be heard before the administrative law judge in November 1978, but a continuance until March 1979 was granted *to appellant* over respondent's objection. On March 14, 1979, appellant's counsel listed Dr. Bertram Forer as one of his witnesses. On March 21, 1979, the hearings, having gone on for longer than anticipated, were continued, at the request of appellant's counsel, until August 6, 1979. At the conclusion of the March hearings, the administrative law judge stated that the matter was continued to August and stated ". . . and we have also scheduled August 7, 8, 9 and 10, to make sure that the matter is completed at that time."

When that hearing was convened on August 6, 1979, appellant's counsel moved for another continuance on the ground that his expert Dr. Forer had been informed of the continuance of the matter when it happened (in March) had indicated his availability and willingness to be a witness but had "left last night for Europe." There was no showing that he was not present because of any emergency or that he had been subpoenaed to attend. The administrative law judge denied appellant's request for a three-week or one-month continuance stating that the matter had been pending long enough, that there had been sufficient time to obtain an expert, but even then offered appellant's counsel a continuance of two more days in order to get and prepare an expert. Appellant's counsel declined the offer for that short continuance and the hearing proceeded. On the last day of the hearing, the administrative law judge noted that they had adjourned early the day before in order to afford appellant's counsel an opportunity to possibly locate another expert, and asked if there was any further evidence. Appellant's counsel responded that there was no such further evidence.

Granting a continuance is discretionary with the hearing officer (Gov. Code, § 11524; *Givens v. Dept. Alcoholic Bev. Control* (1959) 176 Cal.App.2d 529, 532 [1 Cal.Rptr. 446]; see also *Ring v. Smith* (1970) 5 Cal.App.3d 197 [85 Cal.Rptr. 227]). Having requested or acquiesced in three continuances, having had ample notice of the continued date in August 1979, having failed to subpoena Dr. Forer to attend the August 1979 hearing, having shown no emergency reason for Dr. Forer not being present to testify, and having refused the administrative law judge's offer to accommodate him by a further two day continuance in order for him to obtain an expert, appellant cannot now be heard to complain that he was precluded from presenting expert testimony. Under these circumstances, there was no showing of good cause for a continuance and the administrative law judge did not abuse her discretion in denying the request for a continuance of longer than two days.

## THE PENALTY IMPOSED

Lastly, appellant contends that the penalty of license revocation was grossly disproportionate to Dr. Dresser's alleged conduct based upon the evidence and findings discussed above, coupled with his allegation that four and one-half years had passed between the last sexual incident and the time of the Board's decision revoking his license during which period there was no evidence that Dr. Dresser practiced psychology other than admirably and that no other incident of professional misconduct had ever been charged against him. Appellant also contends that he submitted a large number of communications attesting to his valuable work and the importance of his services to psychology clients. As the trial judge noted in his statement of intended decision, these "communications" attesting to his valuable work and the importance of his services were not among exhibits presented to the administrative law judge or to the Committee (Board). The trial judge correctly pointed out that he was without power to disturb the ruling of the Committee (Board) on the question of penalty in the absence of a manifest abuse of discretion, which he held, was not shown in this case.

"The propriety of a penalty imposed by an administrative agency is a matter within its discretion and, absent a manifest abuse thereof, it will not be disturbed upon review by a trial or appellate court. [Citations.] Even if the penalty were to appear to be too harsh according to the court's evaluation, the court is not free to substitute its own discretion for that exercised by the administrative agency. [Citation.] (Fn. omit-

ted.)" (*Cooper v. Board of Medical Examiners, supra*, 49 Cal.App.3d at p. 950;[3] *Shea v. Board of Medical Examiners, supra*, 81 Cal.App.3d 564, 579; *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217 [124 Cal.Rptr. 14, 539 P.2d 774]; *Magit v. Board of Medical Examiners* (1961) 57 Cal.2d 74, 78 [17 Cal.Rptr. 488, 366 P.2d 816].) Even were the penalty to appear harsh to us, still we would not be free to substitute our discretion for that of the administrative body. The facts that reasonable minds might differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within its discretion (see Code Civ. Proc., § 1094.5, subd. (e); *Cooper v. Board of Medical Examiners, supra*, 49 Cal.3d at p. 950 and *Lake v. Civil Service Commission* (1975) 47 Cal.App.3d 224, 228 [120 Cal.Rptr. 452].

The trial court committed no abuse of discretion.

The judgment denying relief in mandamus is affirmed.

Woods, Acting P. J., and Files, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 20, 1982.

---

[3]That footnote omitted alone in the citation from *Cooper* reads as follows:   "[18]It bears mentioning that a psychologist whose license has been revoked may apply for reinstatement one year after the date of revocation. (§ 2962.)" That section is still ·in effect.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.