[Civ. No. 63918. Second Dist., Div. Four. July 22, 1982.]

MILTON FARMER, Plaintiff and Respondent, v.
CITY OF INGLEWOOD et al., Defendants and Appellants.

COUNSEL

Howard Rosten, City Attorney, Jack Ballas, Chief Assistant City Attorney, and Lynn Willhite, Assistant City Attorney, for Defendants and Appellants.

Richard M. Hoffman and Alvin S. Tobias for Plaintiff and Respondent.

OPINION

LUROS, J.*—This is an appeal from the judgment of the Los Angeles Superior Court granting respondent's petition for administrative man-

*Assigned by the Chairperson of the Judicial Council.

damus (Code Civ. Proc., § 1094.5) and compelling appellants to grant respondent a hearing pursuant to appellant's civil service rule VII.[1] Inasmuch as the trial court was required to exercise its independent judgment in this matter and our scope of review is limited to determining whether substantial evidence exists to support the trial court's judgment, our review of the record compels the conclusion that there was sufficient evidentiary support for the order granting the petition. Therefore, we must affirm.

## FACTS

In January 1977 respondent was hired by appellant as a rehabilitation inspector/estimator. Among petitioner's duties were those of assisting property owners in applying for rehabilitation loans and grants, financial counseling, construction planning and cost estimating. In this capacity, respondent was required to work closely with financial institutions in processing loan applications and with appellant's finance department. Respondent was a permanent employee of appellant.

On November 6, 1979, respondent was served with a notice of proposed disciplinary action recommending his discharge from his position with appellant. Attached to and incorporated into this notice was a "Compilation of Charges" wherein seven separate incidents were specified. As to each of these incidents certain facts were set forth and the rules allegedly violated by respondent were designated. The notice required that any response, whether oral or written, be submitted by November 19, 1979, and suspended respondent with pay pending final decision.

Respondent's attorney submitted a written reply on November 19, 1979, wherein each of the charges was specifically denied and a favorable disposition or, alternatively, a formal hearing thereon was requested.

After reviewing the notice of proposed disciplinary action and the written response thereto, the acting deputy city administrator for community development and housing issued a notice of final action dated

---

[1]Rule VII, section 2, subsection (g) states in relevant part: "Any permanent employee ... who desires to appeal a . termination ... may, within ten (10) days after receiving the written grounds therefor from the appointing authority, file a written appeal to the Board of Review together with a written answer to the grounds designated by the appointing authority as reason for the adjudicatory action taken."

November 21, 1979. In this notice it was observed that no new evidence was presented which would cause a reversal of the recommendation of discharge and, therefore, the acting deputy city administrator decided to sustain all of the charges contained in the notice of proposed disciplinary action. The notice neither specified nor incorporated any grounds for the decision to discharge respondent. This document did, however, refer respondent to civil service rule VII with regard to his right to file a grievance and obtain a hearing. Moreover, respondent was advised that the time within which to seek judicial review was governed by Code of Civil Procedure[2] section 1094.6, a copy of which was provided. A replacement for respondent was hired in December 1979 and has since completed his probationary period.

In January 1980, respondent retained new counsel who, on January 21, 1980, contacted appellant in writing in order to determine the status of respondent's matter. This letter requested that appellant waive its time limits and grant respondent a hearing under rule VII. In a written reply received February 1, 1980, appellant refused the requested waiver and stated it was adhering to its notice of final action.

On February 29, 1980, counsel for respondent filed and served on appellant a petition for writ of mandate. It was agreed between counsel for the parties that respondent would give appellant a minimum of 60 days' notice of any hearing on the petition. Due to an inability to secure unemployment benefits over appellant's objection until September 1980, respondent was experiencing great financial difficulties which delayed his proceeding on the petition. Moreover, counsel for respondent underwent a laminectomy in April 1980, and between August and October 1980 he turned over his practice to another attorney and moved to Las Vegas. Successor counsel was advised of the agreement to give appellant at least 60 days' notice of a hearing.

The superior court issued an alternative writ on December 24, 1980, providing for a hearing on the petition on March 2, 1981. The matter was ultimately heard on March 16, 1981, and the court issued findings of fact and conclusions of law as well as its judgment granting the writ on May 4, 1981.

---

[2]Unless otherwise noted, all statutory references herein will be to the Code of Civil Procedure.

ISSUES RAISED ON APPEAL

1. Did respondent fail to exhaust his administrative remedies?

2. Was this a proper case for the trial court to review pursuant to sections 1094.5 or 1085?

3. Was the petition for writ of mandate barred by section 1094.6?

4. Did the trial court err in not finding laches?

DISCUSSION

█ As this court noted in *Los Angeles County Employees' Assn.* v. *Sanitation Dist. No. 2* (1979) 89 Cal.App.3d 294, 299 [152 Cal.Rptr. 415], the "... right to continue in ... permanent public employment [is] a 'vested right' within the meaning of [the 'independent judgment'] rule [of *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 (112 Cal.Rptr. 805, 520 P.2d 29)]." Thus, the trial court below was required to exercise its independent judgment in passing on respondent's petition for writ of mandate and our function of review is narrowly circumscribed. █ As we recently observed in *Dresser* v. *Board of Medical Quality Assurance* (1982) 130 Cal.App.3d 506, 510-511 [181 Cal.Rptr. 797]: "This court's standard of appellate review is stated in *Shea* v. *Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 577-578 ... as follows: 'Where, ... the trial court has rendered its independent judgment following a review of the evidence presented at the administrative hearing, the role of an appellate court is to determine only whether there is credible, competent evidence to support the trial court's judgment. [Citations omitted.] All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the judgment if possible; when two or more inferences can be reasonably deduced from the facts, this court is without power to substitute its deductions for those of the trial court.' (See also, *Yakov* v. *Board of Medical Examiners*, ... [(1968) 68 Cal. 2d 67 (64 Cal.Rptr. 785, 435 P.2d 553)].)" It is from this perspective that we must approach the issues raised by appellant.

1. *Exhaustion of Administrative Remedies*

Appellant initially contends that the trial court improperly granted respondent relief because the petition neither alleged nor demonstrated

that respondent exhausted his administrative remedies. The crux of this argument is that respondent did not request a hearing within the time limits specified in civil service rule VII.

■ Exhaustion of administrative remedies is unquestionably jurisdictional in nature (Cal. Administrative Mandamus (Cont.Ed.Bar 1966)[3] § 6.18, p. 103; *Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 313 [159 Cal.Rptr. 416]; *County of Los Angeles* v. *Farmers Insurance Exchange* (1982) 132 Cal.App.3d 77, 86 [182 Cal. Rptr. 779].) The prerequisite of exhaustion "'requires not merely the initiation of prescribed administrative procedures; it requires pursuing them to their appropriate conclusion and awaiting their final outcome before seeking judicial intervention.'" (*Wilkinson* v. *Norcal Mutual Ins. Co., supra*, 98 Cal.App.3d at pp. 313-314; *County of Los Angeles* v. *Farmers Insurance Exchange, supra*, 132 Cal.App.3d at p. 87.) Nevertheless, the rule of exhaustion is far from inflexible and the failure to exhaust administrative remedies will not preclude resort to the courts where pursuing administrative redress would be futile such as where administrative remedies are unavailable or inadequate. (Cal. Administrative Mandamus (Cont.Ed.Bar Supp. 1981)[4] § 6.26, pp. 99-100; *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 828-829 [140 Cal.Rptr. 442, 567 P.2d 1162]; *Associated Cal. Loggers, Inc.* v. *Kinder* (1978) 79 Cal.App.3d 34, 43 [144 Cal.Rptr. 786]; *County of Los Angeles* v. *Farmers Insurance Exchange, supra*, 132 Cal.App.3d at p. 86.)

■ The trial court in the case at bench expressly found that the administrative remedies provided for in civil service rule VII (see fn. 1, *supra*) were either unavailable or so nebulous as to be wholly inadequate.[5] This stems from the fact that no reasons were ever stated in the purported notice of final action and, therefore, the 10 day time period following receipt of written reasons for disciplinary action within which to request a hearing as to the discipline imposed, assuming arguendo

---

[3]Hereinafter "Administrative Mandamus."

[4]Hereinafter Supplement.

[5]The relevant findings, which this court judicially notices pursuant to Evidence Code section 452, subdivision (d) as appellant requested, provide:

"3. A hearing was required under law, as well as under respondent's Rule 7 on the charges filed against petitioner.

"4. No hearing was ever held nor was petitioner given a written statement of the reasons for the action taken by respondents as required by respondent's Rule 7.

"5. Respondent's purported 'Notice of final action' was not actually a final decision

that respondent's previous request for hearing was premature and ineffective,[6] never commenced to run. In *Martino v. Concord Community Hosp. Dist.* (1965) 233 Cal.App.2d 51, 56 [43 Cal.Rptr. 255], the court noted that the hearing procedure provided for in the hospital's bylaws was not available because the doctor's application for staff privileges was "deferred" rather than being "rejected or denied." Similarly, in the instant case, despite the provision in rule VII, section 2, subsection (g) that a terminated permanent employee desiring to appeal his or her termination "... may, within ten (10) days after receiving the written grounds therefor from the appointing authority, file a written appeal ...", the notice of final action set forth no written grounds. Thus, as in *Martino*, no hearing was available to respondent under the strict terms of rule VII.

Appellants' argument that the notice of final action satisfied the "statement of grounds" requirement of rule VII by necessary implication inasmuch as that notice sustained all of the charges incorporated into the preliminary notice is to no avail. At the outset, it must be observed that the notice of proposed disciplinary action clearly differentiated between "[t]he immediate *grounds* for this action ... [and] the *charges* on which the grounds are based." (Italics added.) Given that the notice of final action only made reference to charges rather than the requisite grounds, the prerequisite to starting the time period within which to request an appeal never was satisfied. ■ ■ ■■■ Moreover, it is well-settled that if findings are required[7] either as a

---

of the respondent until February 1, 1980 due to the failure to provide a hearing and the grounds for the taking of the action.

"6. Failure to follow any technical requirements of respondent's rules is excused by reason of the fact that said rules are so vague that a reasonable man could not be expected to follow them with technical precision."

[6]However, it must be noted that the trial court expressly found that respondent "... through his attorney ... timely requested a hearing on November 19, 1979." (Finding of fact, No. 2.)

[7]In its decision in the case of *In re Sturm* (1974) 11 Cal.3d 258, 267 [113 Cal.Rptr. 361, 521 P.2d 97], the Supreme Court recognized: "... a familiar principle of administrative law calling for findings to memorialize formal administrative agency decisions arrived at through adversary-type hearings. In those instances where the principle is applicable findings are deemed indispensable, first as an aid in apprising litigants of the agency's reasons so that they may decide whether to seek review and, second, as a basis for the review. (*Swars v. Council of City of Vallejo* (1949) 33 Cal.2d 867 ...) The failure to make findings following formal administrative adjudication is fundamentally unfair because an already recognized right of access to a reviewing court is impaired thereby. (*Mahoney v. San Francisco City etc. Employees' Ret. Bd.* (1973) 30 Cal. App.3d 1 ...)" (See also *Swars v. Council of City of Vallejo, supra*, 33 Cal.2d at p. 871.)

matter of due process or by statute[8] "there is no alternative and no implication arises that [they are] to be found within the verbiage of the decision." (*Bostick* v. *Martin* (1966) 247 Cal.App.2d 179, 186 [55 Cal. Rptr. 322]; *Wichita R. R. & Light Co.* v. *Pub. Util. Comm.* (1922) 260 U.S. 48, 57 [67 L.Ed. 124, 129-130, 43 S.Ct. 51].)

Nevertheless, we must recognize that there is some precedential support for appellants' position. (*Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d 867 at pp. 872-873 [206 P.2d 355]. *Hansen* v. *Civil Service Board* (1957) 147 Cal.App.2d 732, 735-736 [305 P.2d 1012].) The Supreme Court in *Swars* found the statement of the Vallejo Civil Service Commission using the words "'... we ... uphold the action taken by the City Council...' is sufficiently clear to meet the informal standards required of administrative agencies" (33 Cal.2d at p. 873), but that case is distinguishable from the one at bench. Whereas in *Swars*, "[t]he resolution of the city council made clear to Swars and all concerned the basis for the charge of misconduct and specifically stated the facts in regard to it" (*ibid.*), the case at bench presents seven separate incidents each of which lists three or more separate charges. Thus, we are here confronted with a situation far more complex than the sole instance of a police officer beating an intoxicated individual in *Swars*. As the Supreme Court cautioned in *Swars* "[a]dministrative findings may be general as long as they satisfy the dual requirements of making intelligent review by the courts possible and apprising the parties of the basis for administrative action." (*Ibid.*) In the instant case neither function was served.

However, even were we to accept as reasonable, appellants' argument that the notice of final action contained by implication an adequate statement of grounds to trigger the time period of rule VII, section 2, subsection (g), the trial court reached an equally reasonable but contrary conclusion in finding No. 4. As noted, we are powerless to substitute our own conclusions and deductions for those of the trial court. (*Dresser* v. *Board of Medical Quality Assurance, supra,* 130 Cal.App.3d at pp. 510-511; *Franz* v. *Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 135 [181 Cal.Rptr. 732, 642 P.2d 792].)

The record below including the letter of November 19, 1979, from respondent's initial attorney to appellant; the notice of final action; the

[8]Civil service rule VII has the same effect as a statute. "A municipal ordinance has the same force within the corporate limits of the city adopting it as does a statute throughout the state." 45 Cal.Jur.3d, Municipalities, section 208, page 326.

text of civil service rule VII, section 2, subsection (g); and appellants' own admission of the allegations of paragraph 11 of the petition together provide the requisite competent, credible and substantial evidence to support the trial court's findings regarding respondent's having exhausted all available administrative remedies except those excused by the actions or omissions of appellant. Thus, we are compelled to uphold the trial court's conclusion of law that "[t]his action is not barred by the doctrine of failure to exhaust administrative remedies."

### 2. *Propriety of Mandamus Under Sections 1094.5 and 1085*

Appellants' second argument is that mandamus is not proper under either section 1094.5 or section 1085 because respondent failed to exhaust his administrative remedies and, therefore, no hearing was ever required. The trial court expressly found that respondent timely requested a hearing and that a hearing was required.[9] Thus, respondent's resort to mandamus pursuant to section 1094.5 was clearly proper. Inasmuch as mandamus was clearly proper under section 1094.5 we need not consider appellants' related theory that this action was not proper under section 1085. It is sufficient to note that appellant's contention that respondent was not entitled to a hearing and, by failing to exhaust his administrative remedies, failed to satisfy the threshold requirements of section 1085 was answered in the previous segment of this opinion. Because they are supported by substantial evidence, we are bound by the trial court's findings and conclusions as to the timeliness of respondent's request for a hearing, the requirement of a hearing, and the inapplicability of the doctrine of failure to exhaust administrative remedies. (*Dresser* v. *Board of Medical Quality Assurance, supra,* 130 Cal. App.3d 506; *Franz* v. *Board of Medical Quality Assurance, supra,* 31 Cal.3d 124.)

### 3. *Statute of Limitations*

■ Appellants' third issue on appeal concerns his claim that the trial court erred in concluding that respondent's "... petition was timely filed and is not barred by [the statute of limitations in] Section 1094.6." This argument is based on the contention that there were no findings or evidence on which to base this conclusion. While "[t]he time to institute judicial review of administrative action is jurisdictional (*U.F.W.* v.

---

[9]See findings of fact 2 and 3 set forth at footnote 5, *supra.*

*A.L.R.B.* (1977) 77 Cal.App.3d 347, 350)" (Supplement, § 8.7, p. 115), this argument must likewise fail.

In *Monroe* v. *Trustees of the California State Colleges* (1971) 6 Cal.3d 399, 405 and footnote 2 [99 Cal.Rptr. 129, 491 P.2d 1105], the Supreme Court recognized that while it is well established "... that the statute of limitations in a mandamus proceeding 'begins to run when the [petitioner's] right first accrues ...' (*Barlow* v. *City Council of Inglewood* (1948) 32 Cal.2d 688, 697 ...; see Code Civ. Proc., §§ 1109, 312)...[u]nder traditional terminology, it is perhaps more precise to view the claim of improper discharge as 'accruing' on the date of the actual discharge and to consider the statute of limitations as 'tolled' while the claimant pursues available administrative remedies. (See, e.g., *Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427, 430-431 ....)"

Applying the foregoing theory to the facts of the instant case, it is manifest that given respondent's timely request for a hearing and the finding that a hearing was legally required, the statute of limitations was tolled until January 30, 1980, when appellant refused to grant such hearing. (*Monroe* v. *Trustees of the California State Colleges, supra,* 6 Cal.3d at p. 405, fn. 2; *Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427 [116 P.2d 37, 136 A.L.R. 800].) An analogy may be drawn to both *Monroe* and *Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382, 391 [29 Cal.Rptr. 657, 380 P.2d 97] both of which involved refusals to reinstate teachers after having reacquired a basis on which to have their terminations set aside. In each case, the Supreme Court found that the statute of limitations began to run from the date of the refusal to reinstate rather than the date of the original termination. (*Monroe* v. *Trustees of the California State Colleges, supra,* 6 Cal.3d at pp. 408-409; *Lerner* v. *Los Angeles City Board of Education, supra,* 59 Cal.2d at p. 391.) Likewise, in the instant case, the period of limitation on respondent's cause of action to set aside his discharge, although technically accruing on November 21, 1979, the date of the notice of final action, was effectively tolled and did not commence to run until January 30, 1980, when appellant refused his request for a hearing. Inasmuch as respondent filed his petition for writ of mandate on February 29, 1980, some 29 days after appellant denied him a hearing, it is manifest that the instant case was commenced well within the ninety day period of limitation specified in section 1094.6.

### 4. *Laches*

■ As the fourth issue on appeal, appellant asserts that the 15-month delay in bringing the matter to a hearing constitutes laches in that appellant suffered prejudice from the delay because a replacement employee was hired and, in the interim, acquired permanent status. This assertion is without merit.

"Ordinarily laches is a question of fact. (See *McClung* v. *Saito* (1970) 4 Cal.App.3d 143, 152 . . . .) Whether laches has occurred in a particular case presents a question primarily for the trial court, and an appellate court will not interfere with a trial court's discretion in this respect unless it is obvious that manifest injustice has been done or unless conclusions do not find substantial support in the evidence. (See *Glass* v. *Gulf Oil Corp.* (1970) 12 Cal.App.3d 412, 433.)" (*Chang* v. *City of Palos Verdes Estates* (1979) 98 Cal.App.3d 557, 563 [159 Cal. Rptr. 630]; see also Supplement, § 8.5A, p. 113.)

The *Chang* case presents a situation very similar to that before this court in the instant case. In *Chang* there was a delay of approximately one year between the time the city council sustained Chang's discharge and the time he sought judicial review. Chang's attorney submitted a declaration explaining that much of the delay resulted from his client's inability to raise the money necessary to obtain a transcript of the administrative proceedings and that four months of the hiatus represented preparation of the petition. In *Chang*, as in the case at bench, ". . . the trial court expressly concluded as a matter of law . . . that the city was not prejudiced by [petitioner's] delay; and that, therefore, petitioner was not guilty of laches." (98 Cal.App.3d at p. 563; cf. finding No. 7.[10])

We conclude, as did the court in *Chang*, that neither of the conditions necessary for interfering with a trial court's exercise of discretion concerning a finding with regard to laches, manifest injustice or a lack of substantial evidence, prevails in the case before us. The very fact which appellant argues in support of its claim of laches, the hiring of a replacement employee, militates against such finding. Appellant ". . . clearly was not prejudiced by [respondent's] delay since, as already noted, it had replaced him many months earlier. Just as clearly, [respondent] never acquiesced in the legality of his discharge. Accordingly, we agree with the trial court that [respondent] was not guilty of laches." (98 Cal.App.3d at p. 563.)

---

[10]"Petitioner is not guilty of laches and respondent has shown no prejudice by any delays in bringing the matter to a hearing."

The judgment of the trial court granting respondent's petition for mandamus and directing appellant to provide him with a hearing pursuant to appellant's civil service rule VII is affirmed.

McClosky, Acting P. J., and Amerian, J., concurred.